UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY; ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY; and ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY, <br><br> Plaintiffs, <br><br> v. <br><br> RELIEF PHYSICAL THERAPY & REHAB INC.; REVIVAL PHYSICAL THERAPY LLC; FIVE STAR COMFORT CARE LLC; CITY 2 CITY TRANSPORTATION, LLC; ORTHOPEDIC MEDICAL SUPPLIES 1 LTD.; UNITED TRANSPORTATION 1 INC.; and FAYHIMIE MERHI, <br><br> Defendants. | C.A. No. _____ <br><br> **Demand for Jury Trial** |

## <u>COMPLAINT</u>

Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, and Allstate Property and Casualty Insurance Company (collectively, "Allstate" and/or "plaintiffs") hereby allege as follows.

## I.   <u>INTRODUCTION</u>

1.     This is a case about physical therapy clinics, a purported home health provider, durable medical equipment ("DME") issuers, medical transportation providers, and their owners, managers, agents, and representatives who abused the

1

medical benefits available under the Michigan No-Fault Act, Mich. Comp. Laws § 500.3101, *et seq*., by engaging in a scheme to defraud Allstate by submitting and causing to be submitted false and fraudulent medical records, bills, and invoices through interstate wires and the U.S. Mail seeking to collect payment from Allstate for treatment and services that were not actually performed, were medically unnecessary, were fraudulently billed, and were not lawfully rendered pursuant to applicable statutes and regulations, including the Michigan No-Fault Act.

2.   Defendants Relief Physical Therapy & Rehab Inc. ("Relief"), Revival Physical Therapy LLC ("Revival"), Five Star Comfort Care LLC ("Five Star"), City 2 City Transportation, LLC ("City 2 City"), Orthopedic Medical Supplies 1 Ltd. ("Ortho Med"), United Transportation 1 Inc. ("United Transportation"), and Fayhimie Merhi ("Merhi") (collectively, the "defendants") each conspired to, and did in fact, defraud Allstate by perpetuating an insurance fraud scheme in violation of federal and state law.

3.   The insurance fraud scheme perpetrated by the defendants and by their close co-conspirator Joseph Awada ("Awada")[1] was designed to, and did in fact, result in payments from Allstate to and on behalf of the defendants pursuant to Michigan's No-Fault Act.

---

[1] Awada died in June 2023.  The vast majority of the services at issue in this Complaint, along with the organization, creation, and perpetuation of the scheme described herein, occurred prior to Awada's death.

4.     All of the acts and omissions of the defendants, described throughout this Complaint, were undertaken intentionally.

5.     By this Complaint, and as detailed in each count set out below, Allstate brings this action for: (1) violations of the federal Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1962(c) and (d); (2) common law fraud; (3) civil conspiracy; (4) payment under mistake of fact; and (5) unjust enrichment. Allstate also seeks declaratory relief that no previously-denied and pending claims submitted to it by the defendants are compensable.

6.     As a result of the defendants' fraudulent acts, Allstate has paid hundreds of thousands of dollars to them related to the patients at issue in this Complaint.

## II.     THE PARTIES

### A.     PLAINTIFFS

7.     Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, and Allstate Property and Casualty Insurance Company are each a company duly organized and existing under the laws of the State of Illinois.

8.     Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, and Allstate Property and Casualty Insurance Company each have their respective principal places of business in Northbrook, Illinois.

9.     At all times relevant to the allegations contained in this Complaint, the plaintiffs were authorized to conduct business in the State of Michigan.

**B.     DEFENDANTS**

**1.     Relief Physical Therapy & Rehab Inc.**

10.     Defendant Relief Physical Therapy & Rehab Inc. is incorporated under the laws of the State of Michigan.

11.     Relief's principal place of business is located in Dearborn, Michigan.

12.     At all relevant times, Relief was operated and conducted by defendants Five Star, City 2 City, United Transportation, and Merhi.

13.     Relief billed Allstate for services not rendered, that were medically unnecessary (to the extent they were rendered at all), and were unlawful in relation to several Allstate insureds, including patients identified in Exhibit 1.

**2.     Revival Physical Therapy LLC**

14.     Defendant Revival Physical Therapy LLC is organized under the laws of the State of Michigan.

15.     Revival's members are Awada, Ali Merhi, and Merhi, each of whom is a citizen of the State of Michigan.

16.     At all relevant times, Revival was operated and conducted by defendants Relief, Five Star, City 2 City, United Transportation, and Merhi.

4

17.     Revival billed Allstate for services not rendered, that were medically unnecessary (to the extent they were rendered at all), and were unlawful in relation to several Allstate insureds, including patients identified in Exhibit 2.

### 3.      Five Star Comfort Care LLC

18.     Defendant Five Star Comfort Care LLC is organized under the laws of the State of Michigan.

19.     Five Star's members are Awada and Ali Merhi, each of whom is a citizen of the State of Michigan.

20.     At all relevant times, Five Star was operated and conducted by defendants Relief, Revival, and Merhi.

21.     Five Star billed Allstate for services not rendered, that were medically unnecessary (to the extent they were rendered at all), and were unlawful in relation to several Allstate insureds, including patients identified in Exhibit 3.

### 4.      City 2 City Transportation, LLC

22.     Defendant City 2 City Transportation, LLC is organized under the laws of the State of Michigan.

23.     City 2 City's member is Mohamed Cheikh, who is a citizen of the State of Michigan.

24.     At all relevant times, City 2 City was operated and conducted by defendants Relief, Revival, and Merhi.

25.     City 2 City billed Allstate for services that were medically unnecessary (to the extent they were rendered at all) and were unlawful in relation to several Allstate insureds, including patients identified in Exhibit 4.

### 5.     Orthopedic Medical Supplies 1 Ltd.

26.     Defendant Orthopedic Medical Supplies 1 Ltd. is incorporated under the laws of the State of Michigan.

27.     Ortho Med's principal place of business is located in Dearborn, Michigan.

28.     At all relevant times, Ortho Med was operated and conducted by defendants Relief, Revival, and Merhi.

29.     Ortho Med billed Allstate for services that were medically unnecessary (to the extent they were rendered at all) and were unlawful in relation to several Allstate insureds, including patients identified in Exhibit 5.

### 6.     United Transportation 1 Inc.

30.     Defendant United Transportation 1 Inc. is incorporated under the laws of the State of Michigan.

31.     United Transportation's principal place of business is located in Redford Township, Michigan.

32.     At all relevant times, United Transportation was operated and conducted by defendants Relief, Revival, and Merhi.

33.     United Transportation billed Allstate for services that were medically unnecessary (to the extent they were rendered at all) and were unlawful in relation to several Allstate insureds, including patients identified in Exhibit 6.

**7.     Fayhimie Merhi**

34.     Defendant Fayhimie Merhi is a resident and citizen of the State of Michigan.

35.     At all relevant times, Merhi operated and controlled Relief, Revival, Five Star, City 2 City, Ortho Med, and United Transportation.

## III.   JURISDICTION AND VENUE

36.     Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over this action relating to the claims brought by the plaintiffs under 18 U.S.C. § 1961 *et seq.*, because they arise under the laws of the United States.

37.     Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over this action because the amount in controversy, exclusive of interest and costs, exceeds $75,000 against each defendant and because it is between citizens of different states.

38.     Supplemental jurisdiction over the plaintiffs' state law claims is proper pursuant to 28 U.S.C. § 1367.

39.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) whereas the vast majority of the acts at issue in this Complaint were carried out within the Eastern District of Michigan.

## IV.    THE DEFENDANTS' FRAUDULENT SCHEME

40.    The scheme described herein was driven by defendant Merhi, Awada, and their business associates and family members, including Ali Merhi and Mohamed Cheikh, who used the medical clinic RICO enterprises named in this Complaint to perpetuate a scheme to defraud Allstate by submitting unlawful and non-compensable claims for benefits under Michigan's No-Fault Act.

41.    The defendants and Awada secured the patients necessary to generate bills to Allstate through a large network that involved illegal solicitation, staged accidents, payments to patients (in cash and other consideration), fabricated referrals, and improper *quid pro quo* relationships with physicians and other medical providers.

42.    Once patients were recruited into the defendants' network, excessive bills were generated for services not actually rendered, through forged and exaggerated records, for unlawful purported services, and for extensive alleged treatment that was done, if at all, pursuant to a predetermined protocol designed only to generate charges to Allstate rather than to patients' individual claimed injuries.

43.    Patients have reported to Allstate that they were induced to present and continue to report to Relief and Revival (the "defendant physical therapy clinics") with cash payments and items of value.

8

44.     In other litigation involving Relief and Awada, documentary evidence from their bank accounts confirms that patients' rent payments (in amounts totaling thousands of dollars) were paid from bank accounts owned and controlled by Awada.

45.     After Relief and Awada were sued in the separate action where these payments were uncovered, the defendants formed defendant Revival and transferred all of the patients of defendant Relief to that new entity (Revival) in an effort to distance themselves from the clear evidence of illegality and fraud.

46.     However, and as detailed herein, the fraudulent claims for No-Fault benefits continued unabated from Revival and the other defendants named herein.

47.     The defendants controlled purported medical treatment billed for patients of the defendant physical therapy clinics, including by arranging for referrals to the other defendant clinics and to providers with whom the defendants maintained improper *quid pro quo* relationships.

48.     To illustrate the degree of control the defendants exercised to make internal referrals among entities involved in this scheme, 96% of patients for whom United Transportation billed, 95% of patients for whom Five Star billed, 79% of patients for whom Ortho Med billed, and 67% of patients for whom City 2 City billed were also patients of either Relief or Revival.

49.    One patient, A.R.[2] (Claim No. 0633233051), succinctly summarized the arrangement and how he came to have bills from multiple defendants by testifying that "[i]t was all set up through Revival."

50.    The scheme described herein also relied significantly on medical doctor associates of the defendants, as the majority of the services for which they billed, including physical therapy, attendant care services, DME, and transportation, all require a prescription from a doctor.

51.    A.R. explained how Revival directed this process by referring him to an associated pain doctor, Bachu Abraham, M.D. ("Abraham").

52.    Abraham then prescribed months of physical therapy, ordered multiple pieces of DME, and issued multiple disability certificates that included attendant care and transportation services, all of which was billed to Allstate by the defendants.

53.    Revival then "set up" attendant care that was billed by defendant Five Star and transportation services that were billed by defendant United Transportation.

54.    Merhi and Awada are laypersons who are not trained or licensed to provide medical diagnoses or care, and medical prescriptions and services that were directed by them were improper and non-compensable.

---

[2] To protect the confidentiality of the patients at issue herein, Allstate refers to them by initials and Allstate claim number.  As the defendants only submit bills to Allstate using the Allstate claim number, they are aware of these patients and can identify them by the information provided herein.

10

55.     As another example of the operation of the defendants' scheme among multiple medical providers, R.W. (Claim No. 0568656243) testified that he was referred to his pain physician "Dr. Fayad" by an employee of Revival and stated that "Joe" [Awada] made his appointment.

56.     R.W. then continued to see Fayad on a monthly basis to receive prescriptions to continue physical therapy that was billed to Allstate by Revival.

57.     The defendants and Awada identified patients for their scheme using several methods, including information improperly and unlawfully obtained from a network of solicitors.

58.     One patient solicitor used by the defendants was Dajhion Sims a/k/a "Humble Sevenmile Buck" ("Sims").

59.     Sims is a prolific solicitor of individuals who claim to be in automobile accidents and who uses social media to promote his connections with clinics and medical providers, his possession of narcotic pain medications, his involvement in staged accidents, and other improper and unlawful activity to generate fraudulent No-Fault claims.

60.     Among the relationships advertised by Sims on social media is with Awada, who is pictured in the post below:



61.    Patients who presented to Relief or Revival based on solicitation, compensation, or staged accidents arranged by Sims, or by any other patient solicitor, did not actually need medical treatment and bills generated as a result of these non-medical factors are not compensable.

## V.    BILLING FOR SERVICES NOT RENDERED

62.    The defendants regularly submitted bills to Allstate seeking payment for treatment and services that were never rendered.

12

63.     The defendants' conduct of faxing and mailing demands for payment for services that were not rendered is indicative of their goal to submit as many bills for payment as possible regardless of whether the treatment was actually rendered and whether it was medically necessary (discussed in detail *infra*).

64.     All of the bills submitted by the defendants to Allstate through interstate wires and the U.S. Mail seeking payment for treatment that never occurred are fraudulent.

65.     Allstate is not required to pay the defendants for services that were never provided to patients at issue in this Complaint and is entitled to recover any payments tendered to the defendants as a result of their fraudulent billing for services not rendered.

### A.     ATTENDANT CARE SERVICES NOT PERFORMED

66.     Defendant Five Star billed Allstate for attendant care services that were not performed.

67.     Five Star was an entity used by the defendants to make payments to friends and relatives of patients for purported attendant care services that were not necessary and were ordered only to provide financial remuneration and induce patients to continue presenting to the defendants for unnecessary services.

68.     Multiple patients have testified that their purported home care provider provided services for a few days a week or only a few hours a day.

13

69.   In contrast, Five Star nearly always billed Allstate for extensive attendant care for alleged services for weeks and months at a time, across consecutive days, and for six (6) to eight (8) hours per day.

70.   For example, Five Star billed Allstate for attendant care services allegedly performed by Aaron Seymour ("Seymour") every day for six (6) hours a day from November 30, 2019 through January 24, 2020 to T.F. (Claim No. 0588408765).

71.   Seymour, however, testified that on weekdays he only provided services to T.F. for four (4) to five (5) days a week, and would only "check on [T.F.]" on weekends.

72.   Seymour's testimony means that for a minimum of twenty-four (24) dates for which Five Star billed Allstate, no attendant care was provided at all.

73.   T.F. also testified that Raven Bellamy ("Bellamy") provided attendant care services for her for two (2) or three (3) weeks, which would be, at most, twenty-one (21) days.

74.   Five Star, however, billed Allstate for attendant care services allegedly provided by Bellamy for 68 days.

75.   As another example, A.R. (Claim No. 0633233051) testified that his sister helped him four (4), sometimes five (5), days a week for approximately four (4) to five (5) hours per day.

76.    Yet, Five Star billed Allstate for eight (8) hours a day of attendant care services for A.R. every day from September 9, 2021 through October 16, 2021, constituting over 100 hours of services billed but not performed based on the most generous application of A.R.'s testimony.

77.    Five Star also billed Allstate for eighteen (18) hours of attendant care services for D.W. (Claim No. 0644777484) every day from May 24, 2021 through July 24, 2021.

78.    Then Five Star billed for eight (8) hours of attendant care for D.W. every day from July 25, 2021 through October 15, 2021.

79.    D.W., however, testified that he received only six (6) to seven (7) hours of attendant care services per day during this time.

**B.    TIMED SERVICES NOT PERFORMED**

80.    As detailed below, the defendant physical therapy clinics billed for nearly identical courses of treatment for almost every patient, regardless of their age, claimed injury, and medical history.

81.    The majority of the treatments and modalities used in this predetermined protocol were timed services for which each unit billed to an insurer represents fifteen (15) minutes of one-on-one treatment by a properly licensed provider.

82.   Patient B.W. (Claim No. 067233559) testified that he never received any one-on-one therapy at Revival despite Revival regularly billing for providing him with three (3) different types of one-on-one therapies including therapeutic exercises, therapeutic massage, and manual therapy.

83.   This testimony was corroborated by Aqib Siddiqui ("Siddiqui"), a physical therapist employed by Revival for the past ten (10) years, who testified that the therapy provided to Revival patients is not one-on-one therapy.

84.   Siddiqui testified that he typically works an eight (8)-hour day at Revival during which he usually sees between twenty (20) and thirty-five (35) patients whose appointments last about a half hour to an hour.

85.   Siddiqui further testified that he can see that many patients in a day because their treatment is not one-on-one but rather he sets patients up with the machines, devices, or exercises they are supposed to be doing, and then leaves them unattended for the majority of their appointment.

86.   What Siddiqui and B.W. described are not the timed physical therapies that Revival and Relief billed for providing.  At best, this describes group therapy, which is an untimed code that may only be billed once per patient per date of service.

87.   Relief and Revival did not provide the one-on-one therapeutic exercises, therapeutic massages, and manual therapy that they routinely and fraudulently billed.

16

88.     Relief and Revival also routinely billed for more units than they claimed to provide.  When billing for timed codes, the total treatment time of timed modalities determines the number of units that may be billed for a patient on a single date of service.

89.     Medical coding rules provide that services that are billed in fifteen (15) minute increments require the performance of at least eight (8) minutes of that particular treatment in order to submit a charge.

90.     When multiple units of timed codes are billed, the second unit requires the full fifteen (15) minutes for the first unit, followed by at least eight (8) minutes of the second unit, meaning at least twenty-three (23) minutes of timed modalities must be reported in order to bill for two (2) units.

91.     Relief and Revival repeatedly billed Allstate for more timed modalities than were actually performed.

92.     As one example, Revival billed Allstate on November 7, 2019 for two (2) units of therapeutic exercise and one (1) unit of therapeutic massage, which are both timed codes, to J.T. (Claim No. 0562265579).

93.     However, Revival reported just thirty-two (32) minutes of timed treatment to J.T., which only supported billing two (2) units, if any treatment was actually provided at all.

17

94.    It is also improper to submit bills for timed services when the time spent for each treatment is not accurately recorded, and bills submitted by the defendant physical therapy clinics for timed services that were not actually timed were improper.

95.    Relief and Revival routinely submitted bills for timed services that were not accurately recorded or recorded at all.

96.    For example, Relief billed Allstate for two (2) units of therapeutic exercises to A.L. (Claim No. 0418876280) on February 9, 2017.

97.    However, the record generated by Relief supposedly supporting this bill did not have any mention of how long the exercises were performed.

98.    The defendants' failure to measure and record the time spent performing alleged treatment was intended to mask the fact that they did not perform treatment for the length of time required to bill Allstate and to avoid creating records that could be easily contradicted by patient reports, surveillance, and other investigative methods.

C.    **EXERCISES NOT PERFORMED**

99.    The defendant physical therapy clinics billed Allstate for therapeutic exercises they could not have performed.

100.   Many of the purported services billed by Relief and Revival required constant one-one-on attendance by the physical therapy professional in order to actually perform the service claimed.

101.   In order to properly bill for services requiring one-on-one attendance, medical documentation must clearly indicate the need for such services requiring the skills of a therapist.

102.   Not only did the defendant physical therapy clinics fail to document the need for one-on-one services, patients reported to Allstate that they did not actually receive one-on-one care during therapeutic exercises.

103.   For example, Revival billed Allstate for therapeutic exercises for E.T. (Claim No. 0614440550) on forty-three (43) dates of service.

104.   E.T. reported to Allstate that exercise was self-guided at Revival.

105.   Self-guided exercise is what people do at a gym; it is not a billable physical therapy service and certainly does not constitute one-on-one treatment.

106.   I.M. (Claim No. 0672332087) testified that he always used Revival's exercise equipment independently, and that no Revival employees attended him while he did so.  Despite this, Revival routinely billed for providing one-on-one therapeutic exercise therapy to I.M. for up to three (3) units per date of service.

107.   Revival also routinely billed for providing B.W. (Claim No. 067233559) with up to three (3) units of therapeutic exercise per date of service.

19

108.   B.W. testified that he never even used Revival's exercise equipment, which he described as "outdated."

109.   Siddiqui admitted that once his patients at Revival learned their exercise routines, the patients did those exercises independently while therapists merely checked on them from time to time.

110.   All of these accounts are corroborated by the fact that many of the exercises Relief and Revival included among their bills for skilled one-on-one therapeutic exercises were repetitive in nature and did not require skilled one-on-one treatment at each appointment.

111.   Patients do not need to be re-taught how to use a recumbent bike or treadmill, both of which were exercises billed by Relief and Revival over multiple appointments, and claims that skilled one-on-one treatment were repeatedly provided with respect to these exercises were false and improper.

112.   Relief's and Revival's billing for therapeutic exercises that neither included nor required one-on-one care from a therapist constitutes billing for services not rendered.

### D.   THERAPEUTIC MASSAGE NOT PERFORMED

113.   The defendant physical therapy clinics billed Allstate for thousands of instances of alleged massage therapy using Current Procedural Terminology

("CPT") [3] code 97124 ("Therapeutic procedure, 1 or more areas, each 15 minutes; massage, including effleurage, petrissage and/or tapotement (stroking, compression, percussion").

114.   The treatment billed by Relief and Revival did not qualify as massage therapy under CPT code 97124.

115.   Relief and Revival used a "massager" device every time they billed for therapeutic massage using CPT code 97124.

116.   Mechanical massage is not covered by the description of CPT code 97124 and thus Relief and Revival billed Allstate for therapeutic massage that was not actually done.

117.   Siddiqui testified that the time billed by Revival for therapeutic massage was for time during which a patient would "have  the massager," indicating that this massage was not only applied by a mechanical device, but also that the device was operated by the patients themselves.

118.   Allstate is not required to pay Relief and Revival for therapeutic massage treatments that require one-on-one manual contact by a skilled therapist when, in fact, no such treatment was rendered to patients.  Allstate is entitled to

---

[3] CPT codes are published annually by the American Medical Association ("AMA") to facilitate the efficient processing of healthcare charges by insurance carriers and other private and governmental healthcare payors.  Providers who are subject to the Health Insurance Portability and Accountability Act ("HIPAA") are required to use CPT codes.

recover any payments tendered to Relief and Revival as a result of their fraudulent billing for such treatment.

### E.   BILLING MULTIPLE TIMES FOR THE SAME SERVICE

119.   Defendants Relief and Revival routinely billed Allstate for multiple units of untimed treatments in a single day.

120.   Physical therapy services that are untimed are only permitted to be billed once per date of service.

121.   As an example, Relief billed Allstate for two (2) units of unattended electrical stimulation of L.S. (Claim No. 0509401543) on multiple dates of service in June 2019.

122.   As unattended electrical stimulation is not a timed service, it may only be billed once per patient per date of service regardless of how long the alleged treatment lasts or how many body parts are subjected to stimulation and a second charge constitutes a bill for a service that was not separate and therefore was not rendered.

123.   As another example, Revival billed Allstate for purported treatment of J.W. (Claim No. 0636678229) from February 8, 2022 through May 31, 2022, during which time it billed for unattended electrical stimulation on 65 dates.

124.   On 56 of those dates, Revival billed for two (2) or more units of unattended electrical stimulation, each of which included at least one (1) charge for a service that was not actually rendered.

### F.   FURTHER EXAMPLES OF BILLING FOR SERVICES NOT RENDERED

125.   In addition to the fraudulent practices detailed above, each of which resulted in numerous claims submitted to Allstate for payment for services not actually performed, the defendants' practice of mailing and faxing fraudulent bills and medical records for alleged services not rendered are exemplified by the following patients:

a.   United Transportation billed Allstate for alleged medical transportation of D.W. (Claim No. 0619233604) from her home to Revival starting on March 18, 2021 and continuing regularly approximately three (3) times per week through the end of May 2021.  The last date on which Revival submitted a bill relative to D.W. was April 14, 2021.   United Transportation continued to bill for a month and a half thereafter for thirteen (13) roundtrips to Revival that did not occur.

b.   United Transportation also billed separately for allegedly transporting K.W. (Claim No. 0619233604), who is a relative of D.W., on many of the same dates despite both patients being allegedly picked up and dropped off at the same times and places.  However, Revival did not start billing for alleged treatment to K.W. until May 4, 2021, which was more than six (6) weeks after United Transportation started billing for her purported transportation to Revival.  In those six (6) weeks, United Transportation billed for seventeen (17) roundtrips to Revival that did not occur.

c.   Relief billed Allstate for almost one (1) year of treatment to L.P. (Claim No. 0486070451).   Throughout that time, Relief billed Allstate for therapeutic exercises on over 100 dates. Alleged therapeutic exercises always included the use of a "recumbent exercise bike."   The skills

23

needed to use a recumbent bike do not need to be retaught on more than 100 separate visits, and it is not possible that skilled one-on-one services were actually provided on each of those dates. Additionally, Relief regularly billed two (2) units of therapeutic activities and one (1) unit of massage therapy while reporting less than thirty-eight (38) minutes of timed treatment per date, which constitutes billing for more timed services than were actually performed. Relief billed Allstate over $7,000 for the alleged use of a massager, which does not constitute therapeutic massage as billed. Relief also regularly billed Allstate for two (2) units of unattended electrical stimulation, which is an untimed code that may only be billed once per day.

d.   Relief billed Allstate for ultrasound, therapeutic exercises, and therapeutic massage for S.H. (Claim No. 0436495351) on multiple dates from January 2, 2017 through March 1, 2017. Ultrasound, therapeutic exercises, and therapeutic massage are each timed treatments, but Relief failed to report any amount of time spent performing each modality.

e.   Five Star billed Allstate for attendant care services for C.H. (Claim No. 0621628205) every day from July 13, 2021 through October 1, 2021 for eight (8) hours each day. C.H. testified, however, that he received attendant care services only five (5) days a week.

f.   D.G. (Claim No. 0567491501) testified that he received attendant care services for about five (5) to six (6) hours a day after his alleged accident on September 9, 2019. Five Star, however, billed Allstate for eight (8) hours for every date of service for which attendant care was billed.

g.   Relief billed Allstate for allegedly performing therapeutic massage for C.D. (Claim No. 0486070451) on June 25, 2018, June 26, 2018, June 27, 2018, and July 3, 2018. C.D. testified that she never received massage therapy.

## VI.   BILLING FOR UNLAWFUL TREATMENT

126.   The defendants violated several Michigan laws and regulations in their effort to bill Allstate as much as possible, including laws and regulations requiring licensure for the lawful provision of medical treatments and services.

### A.   UNLAWFUL AND UNLICENSED ISSUANCE OF DME

127.   Ortho Med billed Allstate for purportedly issuing DME to patients at issue herein.

128.   In order to legally issue DME in Michigan, a provider must obtain a license from the Michigan Board of Pharmacy.

129.   A license from the Michigan Board of Pharmacy is required for all "drugs **and devices** manufactured, distributed, prescribed, dispensed, administered, or issued in this state . . . ." Mich. Comp. Laws § 333.17722(a) (emphasis added).

130.   Ortho Med has never possessed a valid license to issue DME in the State of Michigan.

131.   Allstate is not required to pay Ortho Med for DME issued without a license and is entitled to restitution for payments it was induced to make by Ortho Med's fraudulent bills.

### B.   UNLAWFUL AND UNLICENSED TRANSPORTATION

132.   City 2 City and United Transportation billed Allstate for purportedly providing transportation services to patients at issue herein.

133.    In Michigan, non-emergency vehicles taking patients to medical care appointments must obtain a license from the state.

134.    Both City 2 City and United Transportation were aware of this requirement as evidenced by the fact that they each obtained multiple limousine carrier licenses since 2017.

135.    However, each defendant also allowed its license to lapse for months at a time.

136.    City 2 City did not have a valid limousine carrier license from September 1, 2018 through October 22, 2018 and from September 1, 2020 through February 11, 2021.

137.    Despite its lack of licensure, City 2 City billed Allstate numerous times for transportation services during these time periods.

138.    United Transportation did not have a valid limousine carrier license from September 1, 2019 through October 28, 2019, September 1, 2020 through February 20, 2021, and September 1, 2021 through December 16, 2021.

139.    Despite its lack of proper licensure, United Transportation billed Allstate numerous times for transportation services during these time periods.

140.    Allstate is not required to pay City 2 City and United Transportation for transportation services billed without proper licensure and is entitled to restitution

for payments it was induced to make by City 2 City's and United Transportation's fraudulent bills.

## VII.   **FORGED AND FALSIFIED RECORDS**

141.   In order to conceal their fraud and induce Allstate to make payments to which they were not entitled, the defendants altered, forged, and falsified records submitted to support their bills.

142.   Relief and Revival routinely reported that courses of physical therapy had been prescribed by their associate medical doctors, including Abraham, when in fact patients had not even been evaluated by the claimed prescribing physician.

143.   For example, Relief billed for alleged physical therapy to patient N.D. (Claim No. 0531790921) based on a prescription form allegedly signed and transmitted to Relief by Abraham on January 25, 2019.

144.   However, Abraham did not actually evaluate N.D., if she was evaluated at all, until February 7, 2019, evidencing that Relief's claim of a referral from this physician was fabricated.

145.   Similarly, Revival billed for alleged physical therapy to patient D.S. (Claim No. 0574496112) based on a prescription form allegedly signed by Abraham on January 27, 2020.

146.   Abraham did not bill for an initial evaluation of D.S. until April 7, 2020, which was after the alleged course of therapy that he supposedly prescribed and that was billed by Revival had ended.

147.   Once purported courses of treatment started, the defendants fabricated records to create the appearance that services – if they were done at all – were supervised and approved by physical therapists.

148.   The defendant physical therapy clinics did this by having physical therapists and physical therapist assistants sign blank records prior to any information about treatment being filled in.

149.   The examples below were submitted on different dates by defendant Relief relative to D.B. (Claim No. 0526598684) and its physical therapist clearly signed the record before alleged treatments on six (6) claimed dates of service were inserted:

150. Defendant Revival similarly billed for purported treatment to J.B. (Claim No. 0671865392) for which at least five (5) dates of service had purported treatments input after the physical therapist and physical therapy assistant signed the record claiming to document same:

151. The instances set forth above are merely representative examples of this type of fabricated records. The defendants' routine practice was to have their therapy professionals sign blank records that were later used to allegedly document the performance of the excessive treatment for which they billed.

152. The defendants also fabricated and misrepresented the specific services and modalities that they claim to have rendered on each date of service.

153. For example, Relief submitted a single record to Allstate purporting to document that on six (6) separate dates of service from July 1, 2019 to July 10, 2019, L.E. (Claim No. 0519159800) underwent the exact same treatment consisting of electrical stimulation to his lower back, hot packs, therapeutic massage to his lower

back, and therapeutic exercises for his upper and lower extremities as well as his low back.

154.   On four (4) of the six (6) dates of service that are purportedly documented by this single record, Relief actually billed Allstate for different treatments to different body parts.

155.   The record created by Relief was falsified to create the appearance that the alleged treatment for the first half of July 2019 was properly and accurately recorded when in fact there were no contemporaneous records created for the majority of the dates of service.

156.   As another example, Relief submitted a single record to Allstate purporting to document that on four (4) separate dates of service from June 3, 2019 to June 11, 2019, patient D.B. (Claim No. 0526598684) underwent the exact same treatment consisting of electrical stimulation to her cervical and lumbar muscles, hot packs on the lower back, and therapeutic exercises for her lumbar muscles and lower extremities.

157.   On two (2) of the four (4) dates of service that are purportedly documented by this record, Relief billed Allstate for different treatments to different body parts than documented by this record.

158.   The record created by Relief was falsified to create the appearance that the alleged treatment for the beginning of June 2019 was properly and accurately

recorded when in fact there were no contemporaneous records created for half of the dates of service.

159.   Revival submitted a single record to Allstate purporting to document that on four (4) separate dates of service from November 6, 2019 to November 15, 2019, patient J.T. (Claim No. 0562265579) underwent the exact same treatment consisting of therapeutic exercise for his lumbar muscles, upper extremities and lower extremities, hot packs, electrical stimulation to his lumbar muscles, and therapeutic massage to his lumbar muscles.

160.   On two (2) of the four (4) dates of service that are purportedly documented by this record, Revival billed Allstate for different treatments to different body parts than are documented by this record.

161.   The record created by Revival was falsified to create the appearance that the alleged treatment from November 6, 2019 to November 15, 2019 was properly and accurately recorded when in fact there were no contemporaneous records created for the majority of the dates of service.

162.   The defendants also forged orders and prescriptions for DME to create the appearance that they had been ordered by physicians (which is required by law).

163.   For example, on April 6, 2022, Ortho Med billed for allegedly issuing a back brace and transcutaneous electrical nerve stimulation ("TENS") device to

R.Y. (Claim No. 066450654) based on an order form signed by a physician named Horst Griesser, M.D. ("Griesser").

164.   The signature on the order form submitted by Ortho Med (the first excerpt copied below) has no resemblance to Griesser's actual signature, which was used on a separate form on the same date (the second excerpt copied below):

Physician Signature: _____*Horst Griesser*_____ Date: _4/4/22_

Horst Griesser MD

X _____

Physician Signature

Horst Griesser MD

NPI: 1336158849

4, 4 , 22

Date of Order

165.   Allstate relied on the bills and records submitted by the defendants to accurately and truthfully document the treatment performed.

166.   The false and fabricated bills and records mailed to Allstate by the defendants induced Allstate to pay benefits to which the defendants were not entitled, and Allstate is entitled to repayment for payments it was induced by make by the defendants' falsified submissions.

## VIII.  **IMPROPER KICKBACKS AND INDUCEMENTS**

167.   The defendants used payment of kickbacks and other forms of inducement to recruit patients into their network and to keep them returning to the clinics for the excessively lengthy courses of purported treatment for which they billed Allstate.

168.   Defendant Five Star was used by the defendants to pay and conceal inducements to patients by hiring their friends and family to allegedly perform attendant care services.

169.   Five Star "hired" patients' friends and family, none of whom were qualified or trained to perform attendant care services, and paid them hourly wages for allegedly performing services that consisted mostly of routine housework.

170.   For example, T.F. (Claim No. 0588408765) was allegedly involved in a motor vehicle accident on June 13, 2019.

171.   T.F. testified that after her alleged accident, Awada gave her his business card.

172.   Once T.F. went to physical therapy, she was told that the defendants could also set her up with attendant care.

173.   T.F. testified that she was told that she needed to "bring someone that [she] was comfortable with," so she brought her brother to the physical therapy clinic and he filled out the paperwork on site.

174.   Without providing any formal training or supervision, Five Star paid T.F.'s brother approximately $10 per hour while billing Allstate $39.99 per hour for alleged attendant care services.

175.   T.F. testified that once her brother stopped getting paid, she no longer wanted to continue physical therapy at Revival.

176.   By paying T.F.'s brother for purported services that were never necessary and not done as billed, Five Star induced T.F. to return to Revival far longer than she would have otherwise and generated even more unnecessary bills to Allstate.

177.   Further, T.F.'s brother testified that Five Star and Awada pressured him to work more hours, confirming that the defendants' goal was to increase the total amount billed and not attend to the actual needs of the patient.

178.   The defendants also incentivized patients to present for medically unnecessary treatment and services (if treatment and services were performed at all) by offering them illegal and improper inducements to do so.

179.   T.F. testified that she was given gas money to go to and from her appointments, meaning she was paid for every appointment she attended.

180.   T.F. further testified that "Joe" [Awada] had "t-shirts and jackets" he would give away, confirming that the defendants used various tactics to induce patients to go to their clinics.

181. As discussed above, evidence uncovered in separate litigation involving the defendants revealed that patients had their rent payments made from bank accounts owned and controlled by Awada.

182. Treatment that requires financial or other inducement to order or undergo is medically unnecessary, and all bills mailed to Allstate by the defendants for such treatment were fraudulent.

## IX.   UNNECESSARY AND EXCESSIVE FRAUDULENT TREATMENT

183. The defendants' willingness to bill for services that were never rendered or that were rendered unlawfully demonstrates their willingness to also bill for treatment that was unreasonable and unnecessary.

184. The defendants' goal was to bill for as much treatment as possible, regardless of whether such treatment was reasonably necessary to patients' care, recovery, rehabilitation, and/or arose out of an alleged motor vehicle accident, in order to generate bills to Allstate.

185. The defendants' purported treatment also violated standards of care in the medical community, as services were not indicated, redundant, excessive, and repeated without any benefit to patients.

186. The full extent of the defendants' misrepresentations regarding the lawfulness and necessity of the treatment they billed were not known to Allstate until it undertook the full investigation that culminated in the filing of this action.

187.   The unnecessary treatment billed by the defendants, discussed more fully below, includes the treatment and patients set out in the charts annexed hereto at Exhibits 1 through 6.

188.   All of the claims submitted by the defendants to Allstate through the U.S. Mail and interstate wires seeking payment for unnecessary, excessive, unlawful, and unreasonable treatment are fraudulent.

189.   Allstate is not required to pay the defendants for treatment that was medically unnecessary, and it is entitled to the return of money paid as a result of the defendants' fraud.

190.   None of the above facts were known to Allstate until it undertook its investigation that resulted in the commencement of this action, and are not evident within the four corners of the medical records and bills submitted to Allstate by the defendants.

A.   UNNECESSARY AND EXCESSIVE PHYSICAL THERAPY

191.   The defendants consistently billed Allstate for treatment that was not medically necessary and that was not performed in accordance with standards of care.

192.   The defendant physical therapy clinics used a predetermined treatment plan that was not individualized to each specific patient and resulted in purported services billed to Allstate that were unnecessary and excessive.

193.   Because the defendant physical therapy clinics ordered the same predetermined course of extensive treatment for every patient, regardless of their age, injury, co-morbidities or status, such treatment was never appropriate.

194.   Physical therapy must be objectively indicated; that is, a patient's subjective complaints of pain are not sufficient to justify more than a few weeks of physical therapy.

195.   In the vast majority of motor vehicle accident cases, mild injuries will resolve themselves within a few weeks without any treatment whatsoever.

196.   Thus, the immediate resort to physical therapy using a predetermined protocol of excessive treatment was not related to the care, recovery, or rehabilitation of the patient, thus rendering such physical therapy medically unnecessary and not compensable under Allstate policies or applicable provisions of the Michigan No-Fault Act.

197.   The defendant physical therapy clinics attempted to create the appearance of necessity for their courses of therapy through the use of boilerplate language that had no relation to their actual purported treatment.

198.   For example, the defendant physical therapy clinics purported to set patient goals related to increasing their endurance, but never actually evaluated patient endurance at the outset of treatment or throughout the purported extensive courses of therapy that were billed.

38

199.   Thus, the reference to attempting to increase patient endurance was meaningless and had no actual relation to the treatment billed.

200.   Relief billed Allstate for predetermined treatment plans that included therapeutic exercises, therapeutic massage, and the application of hot or cold packs for 100% of its patients as well as unattended electrical stimulation for more than 90% of its patients and ultrasound for more than 78% of its patients.  *See* Exhibit 1.

201.   Revival billed Allstate for predetermined treatment plans that included therapeutic exercises, therapeutic massages, application of hot or cold packs, and electrical stimulation (either unattended or manual) for more than 90% of its patients.  *See* Exhibit 2.

202.   It is highly improbable that every single patient who presented to these clinics had injuries so similar to one another that the same modalities of physical therapy treatment would be reasonably necessary for almost all of them.

203.   The purported physical therapy billed by Relief and Revival was also unreasonably excessive in length.

204.   As an example, Relief billed Allstate for an initial evaluation of A.Z. (Claim No. 0445532310) on April 25, 2017.

205.   On that date, Relief reported A.Z. had pain in his lower extremities, rated 6-9/10 on the pain scale.

206.   Relief billed Allstate for alleged treatment to A.Z. for over two (2) years until August 1, 2019 and during the final month of billing Allstate, Relief reported treatments only for the right knee.

207.   On August 5, 2019, less than one (1) week after Relief stopped billing Allstate for A.Z., Revival billed Allstate for an initial evaluation of A.Z. and reported the nearly identical pain level of 6/10 as was reported at the start of Relief's purported treatment years earlier.

208.   Revival then continued to bill Allstate for another seven (7) months of alleged treatment to A.Z.

209.   Both Revival and Relief billed Allstate for therapeutic exercises, hot or cold packs, unattended electrical stimulation, and therapeutic massage for almost three years as to A.Z., with little to no improvement to show for it.

210.   This incredibly extensive course of physical therapy to A.Z. should have been adjusted to account for the futility of the attempted modalities and treatment and should have been discontinued entirely long before it was when A.Z. failed to improve.

211.   The defendants' immediate resort to extensive physical therapy may have also caused harm to the patients at issue herein, as acute processes of injury were not allowed to dissipate naturally and follow the expected course of recovery.

212.   Patients rarely should receive physical therapy for more than four (4) to six (6) weeks, as after such time the physical therapy will have reached its maximum benefit and the patient should either cease in-office physical therapy (if the treatment is successful) or be recommended for a different type of treatment (if physical therapy is not successful).

213.   Yet, treatment billed to patients of Relief and Revival rarely changed and once patients were set on the extensive predetermined courses of treatment used by these defendants, such treatments were rarely altered or discontinued, even in the face of clear evidence that they were not working.

214.   For example, on January 21, 2019, Relief billed Allstate for an initial evaluation of L.E. (Claim No. 0519159800) at which time Relief reported L.E.'s lumbar pain as 6/10.

215.   Relief then billed Allstate for 94 dates of purported treatment that included alleged treatment to L.E.'s lumbar spine.

216.   In spite of this extraordinary amount of billing for alleged physical therapy, in August 2019 Relief reported L.E.'s lumbar pain as 5/10, which was barely decreased from the reported January 21, 2019 findings.

217.   Treatment billed to Allstate included the application of hot or cold packs, unattended electrical stimulation, therapeutic exercises, and therapeutic massages on at least 88 dates of service.

218.   Despite L.E.'s lack of improvement, Relief made no changes to L.E.'s treatment plan, evidence that Relief billed Allstate for months of medically unnecessary treatment that served no purpose but to increase bills submitted to Allstate.

219.   Reports from separate physicians following purported treatment by the physical therapy clinic defendants also confirm that the claimed treatment harmed rather than helped patients.

220.   For example, Revival billed for approximately three (3) months of physical therapy to J.B. (Claim No. 0671865392) from June 2022 to September 2022.

221.   At the outset of the purported treatment, Revival reported that J.B.'s pain was rated as 6/10 in his cervical spine and 9/10 in his lumbar spine.

222.   On September 6, 2022, J.B. presented to a separate pain management physician for evaluation and reported that his pain was 10/10 throughout his entire spine, confirming that the extensive therapy billed by Revival had a negative impact on his condition and should have been discontinued.

223.   Because patients who were directed to the defendant physical therapy clinics were often solicited and compensated for seeking treatment, the defendant physical therapy clinics were often just one of several clinics at which such patients claimed to seek treatment.

224.   That the defendant physical therapy clinics' services were medically unnecessary is also evidenced by the fact that they did not evaluate efficacy of prior physical therapy and similar chiropractic treatments that many of their patients had undergone.

225.   In some cases, the defendants billed for alleged therapy at the same time as patients were claiming to receive therapy from other providers, yet made no reference to such other treatment nor explanation of why the redundant services for which they billed were proper.

226.   For example, D.S. (Claim No. 0574496112) claimed to be obtaining physical therapy treatment from a separate provider at the same time as Revival, including at least two occasions on which Revival billed for alleged treatment on the very same days as the other provider, on March 6, 2020 and March 11, 2020.

227.   It is never medically necessary or appropriate for the same alleged physical therapy services to the same patient to be billed twice on the same date by different providers.

228.   As another representative example of unnecessary treatment, M.F. (Claim No. 0467835112) was allegedly involved in a motor vehicle accident on July 20, 2017.

229.   Relief billed Allstate for an initial evaluation of M.F. on August 3, 2017 and reported M.F.'s cervical spine as 7/10, and shoulder pain as 6/10.

230.   Starting in May 2018, Relief routinely reported M.A.'s pain level as 2-3/10, confirming that M.F. was nearly healed and ready to end treatment (or at least transition to home exercises), yet Relief continued to bill Allstate for an additional year of treatment for M.A., until April 2019.

231.   During the last year of billed treatment, M.A.'s pain levels never decreased, evidence that Relief billed Allstate for months of medically unnecessary treatment that served no purpose but to increase bills submitted to Allstate.

232.   D.P. (Claim No. 0654677087) was allegedly involved in a motor vehicle accident on October 22, 2021.

233.   A week later, on October 28, 2021, Revival began billing Allstate for allegedly treating D.P. and continued billing through June 2022.

234.   Revival billed for therapeutic exercises and therapeutic massage on over 90% of the visits and the application of hot packs, manual electrical stimulation, and manual therapy was billed on over half of the visits.

235.   Maintaining the same treatment over such a long period of time is not meant to benefit the patient and confirms Revival's goal was to increase its billing to Allstate.

236.   Allstate is not required to pay the defendant physical therapy clinics for treatment that was rendered (if at all) based on a predetermined treatment protocol

that was not patient-specific, and therefore medically unnecessary, and it is entitled to the return of money paid as a result of the defendants' fraud.

### B.   IMPROPER AND MEDICALLY UNNECESSARY ATTENDANT CARE

237.   The defendants' scheme involved billing Allstate for medically unnecessary and excessive attendant care.

238.   As discussed above, the services claimed by the defendants as "attendant care" were not actually that at all.  If anything was performed at all, it was simple household chores done by friends and family members (many of whom were residents of the same household and who likely already performed such chores without compensation) who were untrained and unsupervised.

239.   Considering the diversity of gender, age, medical history, and alleged injuries sustained in the defendants' patient population, it is highly improbable that the vast majority of patients at issue required extensive hours of attendant care, yet Five Star billed for eight or more hours of attendant services per day on more than 73% of the dates of service it billed Allstate.

240.   For example, Five Star billed Allstate for eight (8) hours of attendant care for thirty (30) consecutive days for J.T. (Claim No. 0562265579) in November 2019.

241.   The services reported for J.T. were daily massages, assisting with bathing, assisting J.T. with his knee and back brace, and general supervision and

monitoring and occasionally also included grocery shopping and accompanying J.T. to appointments, all of which together – even if actually done – could not have required eight (8) hours every day to complete.

242. Further, many of the tasks reported and billed by Five Star as attendant care were not actually attendant care tasks.

243. Attendant care services are only compensable if they are directly related to a patient's care and recovery; ordinary household tasks do not qualify for payment as attendant care.

244. Instead, ordinary household tasks, including preparation of meals, home and yard maintenance, and daily chores, may be paid, if necessary, as replacement services, which Five Star never claimed as the statutory payment amount for replacement services is limited to $20 per day.

245. Many of the alleged attendant care services billed by Five Star, if they were performed at all, were replacement services, not attendant care.

246. As an example, Five Star billed Allstate for attendant care services for M.A. (Claim No. 0467835112) on thirty (30) dates and on each date, claimed to perform six (6) hours of care that included preparing and setting up meals, making M.A.'s bed, straightening her room, cleaning, and taking out the garbage.

247. These services are household services, not attendant care, and therefore were improperly billed to Allstate as attendant care.

46

248.  Five Star's unreasonable charges of $40 per hour for services that should have been capped at $20 per day (if performed at all) resulted in claims exponentially higher than what could be billed if the alleged services were properly reported as replacement services.

249.  Allstate is not responsible for attendant care services that were medically unnecessary and improperly performed, and it is entitled to a return of monies paid to Five Star for such unnecessary and non-compensable services.

## C.    MEDICALLY UNNECESSARY AND EXCESSIVE DME

250.  Another integral part of the defendants' predetermined treatment protocol was to issue excessive and unnecessary items of DME.

251.  DME issued by defendant Ortho Med was not based on medical necessity, but rather based on the amount of billing it would generate to Allstate.

252.  Ortho Med billed Allstate for issuing medically unnecessary and excessive DME often within just days or weeks after patients received the same DME through different facilities.

253.  For example, Ortho Med billed Allstate for allegedly issuing a knee brace, a back brace, and a TENS device to K.R. (Claim No. 0656138954) on March 8, 2022.

254.   Ortho Med then billed Allstate for allegedly issuing a second TENS device and a second back brace (the exact same Delta LSO model) to K.R. less than a month later on April 5, 2022.

255.   The back braces were at least K.R.'s second and third within a period of less than three (3) months, as a separate provider billed for issuing the exact same Delta LSO model back brace (along with several other items of DME) on January 18, 2022.

256.   Ortho Med also billed Allstate for DME that was not actually prescribed by physicians.

257.   For example, on February 27, 2019, Ortho Med billed for allegedly issuing a TENS device to N.D. (Claim No. 0531790921) based on an order from Abraham.

258.   A prescription form claiming to be from Abraham was dated February 21, 2019, but it did not include a TENS device among the equipment ordered.

259.   On April 6, 2022, Ortho Med billed for issuing a back brace and TENS device allegedly ordered by Griesser to R.Y. (Claim No. 0664506540).

260.   Griesser reported evaluating R.Y., but did not report ordering any DME despite the fact that his record has a pre-printed check box to report such order (which was left blank) and an adjacent checkbox to order medications was selected.

48

261.   As discussed above, Ortho Med forged Griesser's signature onto a prescription form to create the appearance that this DME had actually been ordered by a physician.

262.   Ortho Med also billed Allstate for TENS devices that were clearly medically unnecessary.

263.   TENS devices are only indicated for treatment of post-operative pain or for chronic pain, other than low back pain, that has persisted for greater than three (3) months and has failed to respond to other treatment attempts.

264.   Ortho Med issued TENS devices to patients in the days and weeks immediately following their alleged motor vehicle accidents (i.e., patients in the acute rather than chronic stage), and before any other forms of therapy had been attempted.

265.   In addition to being issued for diagnoses and indications for which TENS units are not even intended or proven to work, the equipment (if it was used at all by patients) was redundant of the excessive physical therapy treatment that was being simultaneously billed by Relief and Revival, which included purported electrical stimulation at nearly every appointment.

266.   The defendants never explained to patients or reported how their issuance of TENS units was intended to interact with their in-office treatment.

267. Patient responses to TENS therapy vary and are unpredictable, and it is therefore standard practice for a trial period to be conducted to confirm efficacy before a device is issued.

268. The defendants never conducted trial periods before issuing the TENS devices at issue herein.

269. Indeed, the defendants rarely, if ever, questioned patients about the TENS devices after they were issued, including to determine whether the devices were even being used at all.

270. It is not possible that the devices issued by Ortho Med were being used properly, or at all, because TENS devices require regular re-supplies of electrodes and lead wires.

271. TENS devices are packaged with an initial supply of electrodes that can be expected to last for approximately one (1) month with regular use, if used and cleaned properly.

272. Ortho Med never provided patients with replacement electrodes or lead wires.

273. Therefore, it is impossible that it was ever medically necessary for patients to be issued TENS devices, as such devices are intended only for long-term home use.

274.   The following are several representative examples of Ortho Med billing Allstate for medically unnecessary medical equipment:

a.   A.G. (Claim No. 0507483105) was allegedly involved in a motor vehicle accident on March 16, 2018.  Without completing attempts at other forms of treatment, less than one (1) month later, on April 12, 2018, Ortho Med billed Allstate for issuing a TENS device to A.G.

b.   T.F. (Claim No. 0497367243) was allegedly involved in a motor vehicle accident on October 25, 2017.  One (1) month later, while still in the acute stages of treatment, Ortho Med billed Allstate for issuing a TENS device on November 24, 2017.

c.   On September 10, 2015, Ortho Med billed Allstate for a back brace for F.C. (Claim No. 0365414390).  However, F.C. already had a back brace prescribed by a different physician, making the brace billed by Ortho Med duplicative and medically unnecessary.

d.   Ortho Med billed for a back brace for D.W. (Claim No. 0619233604) on April 12, 2021.  According to D.W.'s medical record, D.W. was receiving help using her back brace in March of 2021, confirming she already had a back brace when Ortho Med billed Allstate, making Ortho Med's back brace duplicative and medically unnecessary.

e.   Ortho Med billed Allstate for a knee brace for M.J. (Claim No. 0440479400) on March 17, 2017.  M.J. never complained of knee pain nor was he diagnosed with a knee injury.

275.   Allstate is entitled to the return of money paid for Ortho Med's medically unnecessary DME issued pursuant to the defendants' predetermined treatment protocol.

### D.   MEDICALLY UNNECESSARY TRANSPORTATION SERVICES

276.  As with prescriptions for unnecessary physical therapy and DME detailed above, the defendants worked with their physician associates to obtain prescriptions for medical transportation that was medically unnecessary and improper.

277.  A restriction on driving is disruptive to patients' lives, particularly when issued for the length of time for which the defendants billed for treatment pursuant to their predetermined protocols addressed above.

278.  To create the appearance that bills submitted by defendants City 2 City and United Transportation were necessary (i.e., that the patient actually required transportation services due to injury), the defendants obtained disability forms signed by their associate physicians that restricted driving only when the patient was going to and from medical appointments.

279.  If a patient can drive for all other activities, it is absolutely medically unnecessary that transportation services be provided only to and from physical therapy and other appointments, and the defendants' claims otherwise were false and intended only to create the appearance of justification for their excessive bills.

280.  For example, the defendants' associated physician Abraham used a form that purported to restrict patients from driving to "medical and surgical visits" but expressly stated that "Community driving is permissible."

281.   As the defendants worked closely with Abraham to obtain prescriptions and orders for their unnecessary services (as discussed above), bills for several of the patients at issue herein were based on this clearly medically improper and unnecessary restriction, including bills submitted by City 2 City with respect to L.P. (Claim No. 0486070451).

282.   Griesser, another physician with whom the defendants worked closely to obtain referrals and prescriptions for unnecessary services, also created exceptions and limitations to his purported driving restrictions, including the following example of a restriction limited "to appointment" that was used by City 2 City to bill relative to O.M. (Claim No. 0566566963):



283.   To further confirm that medical transportation charges relative to O.M. were unnecessary, he submitted claims for payment for household services throughout the time City 2 City was billing and almost never claimed that driving or transportation was performed for him despite having a box for that purpose on the form submitted.

284.   The defendants also billed for medical transportation services for patients for whom transportation services were not necessary at all.

285.   For example, City 2 City billed $74.20 each day it claimed to transport A.M. (Claim No. 0555864867) from his home to Revival for alleged therapy.

286.   A.M. lived just .6 miles from Revival over seven (7) walkable city blocks.

287.   Not only is the amount billed by City 2 City each day for transportation outrageous given this small distance, A.M. simply could have walked to his appointments, where he allegedly participated in therapeutic exercise similar to walking on each date.

288.   Defendant United Transportation also billed for medical transportation services that were unnecessary and improper in the same manner.

289.   As one example, United Transportation billed for alleged services to D.W. (Claim No. 0619233604) on the same dates that defendant Five Star billed for alleged attendant care services that expressly included transporting the patient, including March 18, 19, 23, 24, and 25, 2021.

290.   As set out above, United Transportation's bills for D.W. (and her relative K.W.) were often for dates on which she did not even have physical therapy appointments and were not rendered at all.

291.   Allstate is entitled to the return of money paid to City 2 City and United Transportation for medically unnecessary transportation services and has no

obligation to pay for any pending and previously-denied claims that are not compensable for the reasons set forth herein.

## X.   **FRAUDULENT BILLING PRACTICES**

292.   Providers like the defendant clinics have a responsibility to select and submit the billing codes that accurately and truthfully identify the services performed and the complexity involved in rendering those services.

293.   The defendants failed to meet this responsibility and instead submitted bills for unreasonable payments to Allstate for medically unnecessary and excessive services and used fraudulent billing practices, as discussed *infra*.

294.   The medical records, bills, and invoices submitted to Allstate by, and on behalf of, the defendants contained CPT codes, which are published by the American Medical Association ("AMA").

295.   By utilizing CPT codes to submit billing to Allstate, the defendants represented that the services they billed for corresponded to and were accurately described by the descriptions for the CPT codes they chose.

296.   The defendants never communicated to Allstate that they intended that the CPT codes they used to submit bills have any meanings other than those ascribed and published by the AMA.

297.   Allstate reasonably relied on the representations and published definitions assigned to the CPT codes billed by the defendants.

298.   Allstate reasonably relied on the defendants' utilization of CPT codes to accurately report the services they rendered to Allstate insureds.

299.   The bills submitted to Allstate by the defendants were submitted on Health Insurance Claim Forms ("HICF") approved by the National Uniform Claim Committee ("NUCC") and referenced in the NUCC Instruction Manual.

300.   The back of all HICF forms contains the following language in bold font: "NOTICE: Any person who knowingly files a statement of claim containing any misrepresentation or any false, incomplete or misleading information may be guilty of a criminal act punishable under law and may be subject to civil penalties."

301.   Despite the warning on the back of the HICF forms, the defendants included false, incomplete, and misleading information in the bills and medical records submitted to Allstate through interstate wires and the U.S. Mail.

## A.   FRAUDULENT DOUBLE BILLING

302.   The federal government instituted the National Correct Coding Initiative ("NCCI") to promote national correct coding methodologies and to control improper coding leading to inappropriate payment for Medicare Part B claims.

303.   The NCCI contains an edit table entitled the "Column One/Column Two Correct Coding Edit Table" that identifies billing codes that should not be reported together because the services (and payment) of the Column Two code is subsumed by the services (and payment) for the Column One code.

304.   Violation of the edits (billing a Column One code and a Column Two code on the same day for the same patient) is a fraudulent practice that results in double billing as a provider bills separately for individual components of a procedure that are included in another billing code also billed for the same date of service.

305.   The defendants routinely double billed Allstate, which resulted in tens of thousands of dollars in fraudulent bills.

### 1.   <u>Double Billing for Alleged Massage</u>

306.   Defendants Relief and Revival routinely submitted charges to Allstate using CPT code 97124 ("massage, including effleurage, petrissage and/or tapotement (stroking, compression, percussion)") and CPT code 97140 ("manual therapy techniques (eg, mobilization/manipulation, manual lymphatic drainage, manual traction), 1 or more regions, each 15 minutes") for the same patient on the same date.

307.   CPT code 97124 is a Column Two code and CPT code 97140 is a Column One code when billed on the same date for the same patient.

308.   Relief and Revival submitted thousands of dollars in claims for purported therapeutic massage using CPT code 97124 on the same dates they billed for purported manual therapy using CPT code 97140, all of which amounts to fraudulent double billing. *See* Exhibits 1 and 2.

309.   All bills submitted to Allstate for massage and manual therapy allegedly performed on the same date for the same patient were fraudulently double billed, and none of the claims for massage are payable.

### 2.     Double Billing for Alleged Application of Hot and Cold Packs

310.   The defendant physical therapy clinics also billed for the application of hot and cold packs.

311.   The application of hot or cold packs is considered a component of other services and such application was performed, if at all, contemporaneously with the use of other treatment modalities such as electrical stimulation.

312.   Relief and Revival consistently billed Allstate for application of hot or cold packs for the same patient on the same date when they also billed for simultaneously provided electrical stimulation.  *See* Exhibits 1 and 2.

313.   Each instance that the defendants billed Allstate for application of hot and cold packs in conjunction with other purported services is fraudulent double billing and not compensable.

### B.     UNREASONABLE AND GROSSLY EXCESSIVE CHARGES

314.   The amounts the defendants charged to Allstate were far above reasonable and customary prices for the treatment and services allegedly rendered.

315.   Claims for medical benefits under Michigan's No-Fault Act can only be made for "reasonable charges incurred for reasonably necessary products,

services and accommodations for an injured person's care, recovery, or rehabilitation." Mich. Comp. Laws § 500.3107(1)(a).

316.   The defendants routinely billed Allstate at rates that were unreasonable and had no relation to the services allegedly performed.

317.   The defendants knew that the amounts they billed Allstate were unreasonable at the time the charges were submitted and intentionally billed these excessive and unreasonable amounts as part and in furtherance of their scheme to defraud Allstate by inducing it to pay the defendants monies they were not entitled to receive.

318.   The potential of receiving a windfall to which they were not entitled by charging unreasonable and excessive amounts also motivated the defendants' decision to bill Allstate for treatment not rendered and unlawful and unnecessary treatment, and was their motivation to resort to fraudulent billing practices as described *supra*.

319.   In each such case, including those described in the following sections, Allstate was harmed when it was induced to pay the unreasonable rates billed by the defendants.

320.   Allstate also was harmed even when it did not pay the unreasonable and excessive amounts charged by the defendants, because it was nevertheless obligated to investigate and adjust each claim thereby incurring costs.

### 1.   <u>Unreasonable Charges for Physical Therapy</u>

321.   Relief and Revival submitted charges of $90 for each purported physical therapy modality at issue herein.

322.   Revival then increased its flat rate to $110 in 2020.

323.   While all of these charges far exceed the amounts paid by other classes of payors, the uniformity of these rates reveals that they have no valid basis and are intended only to extract as much money as possible from insurers like Allstate.

324.   The uniform rates charged by Relief and Revival mean that Allstate was billed the same amount for modalities that were done with patients left alone, such as unattended electrical stimulation, as it was billed for alleged highly skilled services provided by licensed therapists, such as neuromuscular reeducation.

325.   The defendants' uniform charge amounts were also applied to services that have multiple CPT codes to reflect the level of service provided.

326.   For example, the defendants charged the same amount for electrical stimulation regardless of whether the bill was submitted using CPT code 97014, indicating the service was unattended, or CPT code 97032, indicating that the service was provided with direct one-on-one patient contact.

327.   Charging the same amount for services that are performed with such widely varying levels of supervision and expertise required is arbitrary and unreasonable.

## 2.    Unreasonable Charges for Transportation Services

328. City 2 City and United Transportation submitted charges to Allstate for purported medical transportation that were excessive and unreasonable.

329. For example, City 2 City billed Allstate for purportedly transferring I.A., D.A., and I.H. (Claim No. 0468062427) from their home to Troy Physical Therapy Services LLC ("Troy PT"), eleven (11) times in 2017.

330. During this time, I.A., D.A., and I.H. lived 8 miles from Troy PT, yet City 2 City charged Allstate $126.70 per person to transport I.A., D.A., and I.H., on the same dates of service, to Troy PT from their home for a total of $380.10 per day.

331. For the same trip, I.A., D.A., and I.H. could have used the Uber app to obtain transportation to Troy PT for under $20 total.

332. As another example, City 2 City billed Allstate for purportedly transporting D.B. (Claim No. 0526598684) from her home to Relief several times per week from January 16, 2019 through April 30, 2019.

333. Throughout this time, City 2 City billed Allstate $161 per day.

334. During the entire period of her alleged treatment, D.B. lived 12.8 miles away from Relief.

335. For the same trip, D.B. could have used the Uber app to obtain transportation to Relief for approximately $40 round trip.

336.   City 2 City also billed Allstate for purportedly transporting M.A. (Claim No. 0467835112) from her home to Relief several times a week from August 2017 through January 2018.

337.   M.A. lived just 1 mile from Relief, yet City 2 City charged Allstate $74.90 to transport her to Relief each day.

338.   City 2 City's charges were unreasonable and far exceeded other transportation options available.

339.   United Transportation submitted charges to Allstate that included a $50 "pick up" fee, a $50 "drop off" fee, and a $10 hourly fee on each date of service.

340.   These charges that have no relation to the services allegedly provided by United Transportation meant that each bill it submitted to Allstate had a baseline amount of at least $110, regardless of the distance a patient was transported or the number of patients transported in the same vehicle at the same time.

341.   As one example of the unreasonable result of such charges, United Transportation billed Allstate for purportedly transporting C.H. (Claim No. 0621628205) from her home to Revival multiple times a week in 2021.

342.   C.H. lived six (6) to ten (10) miles from Revival, depending on the route chosen.  Not only did United Transportation intentionally use a longer, twenty (20)-mile route to transport C.H. and ultimately increase costs, United Transportation billed Allstate $165 for the trip.

343.   For the same trip, C.H. could have used the Uber app to obtain transportation to Revival for under $35.

344.   Further, if C.H. had used a rideshare app, she not only would have been charged a fraction of the price, she also would have received individualized service.

345.   To maximize the amount of its charges, United Transportation picked up multiple passengers from different locations and transported them to Revival *en masse*.

346.   The following are just a few examples of United Transportation's unreasonable and excessive charges for transportation services:

a.   United Transportation billed Allstate for purportedly transporting L.G. (Claim No. 0568719116) from his home to Revival multiple times a week in 2020.  During this time, L.G. lived less than 7 miles from Revival, yet United Transportation billed Allstate $165 per trip.  For the same trip, L.G. could have used the Uber app to obtain transportation to Revival for under $40 roundtrip.

b.   United Transportation billed Allstate $219.50 for purportedly transporting N.D. (Claim No. 0531790921) from his home to Revival multiple times per week in 2019.  For the same trip, N.D. could have used the Uber app to obtain transportation to Relief for approximately $80, which is less than half of United Transportation's charges.

c.   United Transportation billed Allstate $133.10 for purportedly transporting T.D. (Claim No. 0578063539) from her home to Revival multiple times a week in 2019.  For the same trip, T.D. could have used the Uber app to obtain transportation to Revival for under $30.

### 3.   Unreasonable Charges for Attendant Care

347.   Five Star billed Allstate for attendant care services at unreasonable rates.

348.   The majority of services billed by Five Star were done (if at all) by unlicensed and untrained amateurs who were friends or family of the patient.

349.   Five Star has also admitted that it pays its home health aides $10 -$15 an hour, and no more than $12 an hour to untrained aides, but bills Allstate nearly four (4) times that amount at $39.99 per hour.

350.   One of Five Star's owners, Ali Merhi, has also testified that Five Star does not require attendant care providers to itemize their time and does not keep track of their hours.

351.   As it provided virtually no services, Five Star's application of a multiple to the amount paid to the friends and family of patients is unreasonable and without basis.

### 4.   Unreasonable Charges for Durable Medical Equipment

352.   In addition to being an unlicensed facility issuing medically unnecessary DME contrary to applicable standards of care, as discussed *supra*, Ortho Med charged excessive and unreasonable rates for the DME purportedly issued to patients at issue in this Complaint.

353.   As one example, Ortho Med charged Allstate $2,495 for a walker allegedly issued to I.A. (Claim No. 0499693330).

354.   This same product can be obtained from multiple retailers for one-eighth of the price charged by Ortho Med, including Walmart, which sells the product for $300.

355.   As another example, Ortho Med charged Allstate $1,995 for a four (4) lead TENS device.

356.   A TENS device can be purchased from various retailers for under $100, including CVS.

357.   Ortho Med routinely charged Allstate $1,295 for a Comfortland universal hinged knee brace that can easily be found at various retailers for under $100.

358.   Ortho Med also billed Allstate $249 for Biofreeze, which is not DME at all and instead is a common topical pain reliever that can be found at retail stores such as Target and Walmart for $12.

359.   Allstate is not required to pay Ortho Med for DME billed for more than reasonable and customary rates and is entitled to the return of all sums paid to Ortho Med.

## XI.   MISREPRESENTATIONS MADE BY THE DEFENDANTS AND RELIED ON BY ALLSTATE

### A.   MISREPRESENTATIONS BY THE DEFENDANTS

360.   To induce Allstate to pay promptly their fraudulent charges, the defendants submitted and caused to be submitted to Allstate false documentation that materially misrepresented that the services they billed were necessary within the meaning of the Michigan No-Fault Act, that the charges for the same were reasonable, and that all treatment was lawfully and actually rendered.

361.   Claims for medical benefits under Michigan's No-Fault Act can only be made for "reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation."  Mich. Comp. Laws § 500.3107(1)(a).

362.   Moreover, claims for medical benefits under Michigan's No-Fault Act can only be made for services that are "lawfully render[ed]."  Mich. Comp. Laws § 500.3157(1).

363.   Thus, every time the defendants submitted bills and medical records to Allstate supporting their claims for No-Fault benefits, the defendants necessarily warranted that such bills and records related to lawfully and actually rendered and necessary treatment for their patients' care, recovery, or rehabilitation.

364.   There are no less than ten (10) separate reasons why the defendants' alleged treatment was not in fact performed, was not lawful, was not medically necessary, and was fraudulently billed to Allstate:

a.    Relief, Revival, Five Star, and United Transportation routinely billed for services that were not performed at all.

b.    Ortho Med unlawfully billed for DME without possessing the licensure or authorization required by the State of Michigan.

c.    City 2 City and United Transportation unlawfully billed for transportation services without possessing the licensure or authorization required by the State of Michigan.

d.    The defendants illegally obtained patients for unnecessary treatment, including through staged accidents, payment of kickbacks and other consideration, and solicitation.  The defendants' methods of obtaining patients did not include considerations of medical necessity and allowed individuals with no medical training to control patients' treatment.

e.    Relief, Revival, and Ortho Med forged and falsified records that were submitted to Allstate to create the appearance that treatment and equipment billed was lawful, proper, and ordered by physicians.

f.    Relief and Revival billed for excessive and unreasonable amounts of physical therapy.

g.    Ortho Med billed for unnecessary and excessive DME in violation of standards of care.

h.    Five Star billed for unnecessary and excessive purported attendant care services.

i.    Relief and Revival double billed for alleged services by submitting bills using multiple CPT codes to describe the same procedure allegedly performed.

j. Relief, Revival, Five Star, City 2 City, Ortho Med, and United Transportation submitted bills at rates that had no basis and were many times higher than was reasonable to charge for services, if such services were rendered at all.

365. As detailed *supra*, the defendants frequently violated established standards of care, treated excessively, and billed for treatment without basis or adequate substantiation.

366. If treatment is not required for a patient's care, recovery, or rehabilitation, such treatment is not medically necessary and it is not a covered No-Fault benefit.

367. The foregoing facts – including billing for services not rendered, falsifying medical records, paying kickbacks, billing for treatment without a license, using a predetermined treatment protocol to inflate charges, and misrepresenting the necessity of treatment, services, and DME – were not, and could not have been, known to Allstate until it commenced its investigation of the defendants shortly before the filing of this action.

368. Taken as a whole, the prevalence of such facts and the defendants' failure to abide by accepted standards of care render the treatment, services and DME billed by the defendants unnecessary and unlawful.

369.  The fact of unnecessary treatment is present with respect to every patient at issue in this Complaint, including those specific patient examples set out above and in the charts annexed at Exhibits 1 through 6.

370.  Thus, each claim for payment (and accompanying medical records) under Michigan's No-Fault Act faxed and mailed to Allstate by, on behalf of, or with the knowledge of the defendants constitutes a misrepresentation because the treatment underlying the claim was not lawful and medically necessary, as it must be in order to be compensable under Michigan law.

371.  Moreover, each HICF submitted to Allstate by the defendants contained the following notation: "NOTICE: Any person who knowingly files a statement of claim containing any misrepresentation or any false, incomplete or misleading information may be guilty of a criminal act punishable under law and may be subject to civil penalties."

372.  Through the submission of patient records, invoices, HICFs, and other medical documentation to Allstate via interstate wires and the U.S. Mail, the defendants attested to the fact, lawfulness, and medical necessity of the visits, examinations, attendant care, procedures, DME, transportation, and ancillary services for which they billed Allstate.

373.  As the defendants did not render lawful and reasonably necessary medical treatment, services, and DME, and misrepresented the treatment, services,

and DME purportedly performed, each bill and accompanying documentation faxed or mailed by or on behalf of the defendants to Allstate constitutes a material misrepresentation.

### B.     ALLSTATE'S JUSTIFIABLE RELIANCE

374.   The facially valid documents submitted to Allstate by the defendants were designed to, and did in fact, induce Allstate to rely on the documents.

375.   At all relevant times, the defendants concealed from Allstate facts regarding the fact, lawfulness, and medical necessity of services allegedly provided to prevent Allstate from discovering that the claims submitted by and on behalf of the defendants were not compensable under the No-Fault Act.

376.   These misrepresentations include submitting false medical documentation, including HICFs, documenting the fact, lawfulness, and necessity of medical treatment, DME, and services in order to seek payment under Michigan's No-Fault Act.

377.   Due to the defendants' material misrepresentations and other affirmative acts designed to conceal their fraudulent scheme, Allstate did not and could not have discovered that its damages were attributable to fraud until shortly before it filed this Complaint.

378.   In reliance on and as a result of the defendants' misrepresentations, Allstate paid money to the defendants to its detriment.

379.   Allstate would not have paid these monies had the defendants provided true and accurate information about the fact, lawfulness, and necessity of the referrals and medical services billed.

380.   As a result, Allstate has paid hundreds of thousands of dollars to the defendants as a result of the false medical documentation and false representations regarding the defendants' eligibility for payment under the Michigan No-Fault Act.

## XII.   MAIL AND WIRE FRAUD RACKETEERING ACTIVITY

381.   As discussed above, the treatment, services, and DME billed by the defendants were not medically necessary, were unlawful, and were fraudulently billed.

382.   The objective of the scheme to defraud Allstate, which occurred throughout the period set out in Exhibits 1 through 6, was to collect No-Fault benefits to which the defendants were not entitled because the medical services rendered, if at all, were not necessary, were not lawfully rendered, were fraudulently billed, and were billed at excessive and unreasonable amounts.

383.   This objective necessarily required the submission of bills for payment to Allstate.

384.   The defendants created, prepared, and submitted false medical documentation and placed in a post office and/or authorized depository for mail

matter things to be sent and delivered by the United States Postal Service or sent through faxes over interstate wires.

385.   All documents, medical records, notes, reports, HICFs, medical diagnoses, letters, correspondence, and requests for payment in connection with the insurance claims referenced throughout this pleading traveled through interstate wires or the U.S. Mail.

386.   All medical records and bills submitted through interstate wires by the defendants were faxed from the defendants in Michigan to Allstate in Iowa.

387.   Allstate received all medical records and bills faxed to it by the defendants in Iowa.

388.   Every automobile insurance claim detailed herein involved at least one (1) use of the U.S. Mail, including the mailing of, among other things, the notice of claim and insurance payments.

389.   It was foreseeable to the defendants that faxing bills and medical records to Allstate would trigger mailings in furtherance of the scheme to defraud, including actual payment of fraudulent bills via checks mailed by Allstate.

390.   Every payment at issue in this Complaint where Allstate was induced to rely on the defendants' false medical records and bills was tendered via a check mailed by Allstate using the U.S. Mail.

391.   The fraudulent medical billing scheme detailed herein generated hundreds of mailings and faxes.

392.   A chart highlighting representative examples of mail and wire fraud arising from the defendants' patient/business files is annexed hereto at Exhibit 7.

393.   As detailed herein, the defendants also submitted, caused to be submitted, or knew medical documentation and claims for payment would be submitted to Allstate via fax or mail related to each exemplar patient discussed in this Complaint.

394.   It was within the ordinary course of business for Relief, Revival, Five Star, City 2 City, Ortho Med, and United Transportation to submit claims for No-Fault payment to insurance carriers like Allstate through faxes and the U.S. Mail.

395.   Moreover, the business of billing for medical services by each of the entity defendants at issue herein is regularly conducted by fraudulently seeking payment to which each defendant clinic is not entitled through the use of fraudulent communications sent via faxes and the U.S. Mail.

396.   In other words, discrete (claim- and patient-specific) instances of mail and wire fraud are a regular way of doing business for each of the entity defendants.

397.   The entity defendants, at the direction and with the knowledge of their owners and managers (including defendant Merhi), continue to submit claims for

payment to Allstate and, in some instances, continue to commence litigation against Allstate seeking to collect on unpaid claims.

398.   Thus, the defendants' commission of mail and wire fraud continues.

399.   As all of the defendants named herein agreed that they would use (and, in fact, did use) the mails in furtherance of their scheme to defraud Allstate by seeking payment for services that are not compensable under the Michigan No-Fault Act, these defendants committed mail fraud, as defined in 18 U.S.C. § 1341.

400.   As defendants Relief, Revival, City 2 City, Ortho Med, United Transportation, and Merhi agreed that they would use (and, in fact, did use) faxes over interstate wires in furtherance of their scheme to defraud Allstate by seeking payment for services that are not compensable under the Michigan No-Fault Act, these defendants committed wire fraud, as defined in 18 U.S.C. § 1343.

401.   Allstate reasonably relied on the submissions it received from the defendants, including the submissions set out in Exhibits 1 through 7 annexed hereto and identified in the exemplar claims above.

402.   As the defendants agreed to pursue the same criminal objective (namely, mail and wire fraud), they committed a conspiracy within the meaning of the RICO Act, 18 U.S.C. § 1962(d), and are therefore jointly and severally liable for Allstate's damages.

## XIII.  **DAMAGES**

403.  The fraudulent conduct by the defendants injured Allstate in its business and property by reason of the aforesaid violations of law.

404.  Although it is not necessary for Allstate to calculate damages with specificity at this stage in the litigation, and Allstate's damages continue to accrue, Allstate's injury includes compensatory damages of hundreds of thousands of dollars.

405.  Allstate's claim for compensatory damages does not include payment made with respect to any Assigned Claim Facility/Michigan Automobile Insurance Placement Facility claimant.

406.  Allstate's claim for compensatory damages derives from checks sent by Allstate to the defendants through the U.S. Mail.

407.  As such, the defendants knew that the U.S. Mail would be used as part of their scheme to defraud as the defendants only faxed and mailed medical records and bills for the purpose of having Allstate rely on such documents and mail payment in response thereto.

408.  Allstate also seeks damages, in an amount to be determined at trial, related to the cost of claims handling/adjustment for claims mailed and faxed by the defendants, which includes the cost of investigation to uncover the fraudulent nature of the claims submitted by the defendants.

409.   Allstate investigated each of the defendants both individually and in connection with the comprehensive scheme detailed herein and incurred investigative and claims handling expenses with respect to each defendant.

## XIV.  CAUSES OF ACTION

### COUNT I
### VIOLATION OF 18 U.S.C. § 1962(c)
### (Relief Enterprise)
### Against Five Star Comfort Care LLC, City 2 City Transportation, LLC, United Transportation 1 Inc., Orthopedic Medical Supplies 1 Ltd., and Fayhimie Merhi

410.   Allstate re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 409 set forth above as if fully set forth herein.

411.   Relief constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, and the activities of which affect, interstate commerce.

412.   In connection with each of the claims identified in the within Complaint, defendants Five Star, City 2 City, United Transportation, Ortho Med, and Merhi ("Count I defendants") intentionally caused to be prepared, faxed, and mailed false medical documentation by Relief, or knew that such false medical documentation would be faxed and mailed in the ordinary course of Relief's business, or should have reasonably foreseen that the mailing and faxing of such false medical documentation by Relief would occur, in furtherance of the Count I defendants' scheme to defraud.

76

413.   The Count I defendants knew that two (2) or more faxes and mailings would be sent to demand and receive payment from Allstate on certain dates, including those mailings and faxes identified in the chart annexed hereto at Exhibit 7.

414.   As documented above, the Count I defendants repeatedly and intentionally submitted, caused to be submitted, or knew that documentation would be submitted to Allstate for medical services that were purportedly performed by Relief, which they knew would be billed by Relief, in order to collect payment from Allstate under applicable provisions of the Michigan No-Fault Act.

415.   Merhi owned, managed, and controlled Relief and was responsible for all actions taken by Relief and its staff.

416.   United Transportation and City 2 City transported patients to Relief for unnecessary physical therapy.

417.   Ortho Med billed for unnecessary DME issued to patients as part of the defendants' predetermined treatment protocol, which gave the appearance that patients were injured when they were not, which allowed Relief to continue billing Allstate for unnecessary and excessive treatment.

418.   Five Star billed Allstate for unnecessary attendant care for patients of Relief, which was used to create the appearance of injury and support for bills submitted by Relief.

419.   The Count I defendants submitted, and caused to be submitted, false and fraudulent medical records, bills, and invoices that created the appearance of injury and permitted Relief to continue billing for unlawful and medically unnecessary alleged treatment.

420.   As a result of, and in reasonable reliance on, these misleading documents and representations, Allstate, by its agents and employees, issued payment drafts to Relief for the benefit of the Count I defendants that would not otherwise have been paid.

421.   The Count I defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

422.   By virtue of the Count I defendants' violation of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted, caused to be submitted, or known to be submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT II
## VIOLATION OF 18 U.S.C. § 1962(d)
### (Relief Enterprise)
### Against Five Star Comfort Care LLC, City 2 City Transportation, LLC, United Transportation 1 Inc., Orthopedic Medical Supplies 1 Ltd., and Fayhimie Merhi

423.   Allstate re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 409 set forth above as if fully set forth herein.

424.   Defendants Five Star, City 2 City, United Transportation, Ortho Med, and Merhi ("Count II defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the facilitation of the operation of Relief.

425.   The Count II defendants each agreed to further, facilitate, support, and operate the Relief enterprise.

426.   As such, the Count II defendants conspired to violate 18 U.S.C. § 1962(c).

427.   The purpose of the conspiracy was to obtain insurance payments from Allstate on behalf of Relief even though Relief was not eligible to collect such payments by virtue of its unlawful conduct.

428.   The Count II defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including inter-referrals between themselves and the creation and submission to Allstate of insurance claim and medical record documents containing material misrepresentations.

429.   Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make insurance payments as a result of the Count II defendants' unlawful conduct described herein.

430.   By virtue of this violation of 18 U.S.C. § 1962(d), the Count II defendants are jointly and severally liable to Allstate and Allstate is entitled to recover from each three times the damages sustained by reason of the claims submitted by or on behalf of the Count II defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT III
### VIOLATION OF 18 U.S.C. § 1962(c)
### (Revival Enterprise)
### Against Relief Physical Therapy & Rehab Inc., Five Star Comfort Care LLC, City 2 City Transportation, LLC, United Transportation 1 Inc., Orthopedic Medical Supplies 1 Ltd., and Fayhimie Merhi

431.   Allstate re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 409 set forth above as if fully set forth herein.

432.   Revival constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, and the activities of which affect, interstate commerce.

433.   In connection with each of the claims identified in the within Complaint, defendants Relief, Five Star, City 2 City, United Transportation, Ortho Med, and Merhi ("Count III defendants") intentionally caused to be prepared, faxed, and mailed false medical documentation by Revival, or knew that such false medical

documentation would be faxed and mailed in the ordinary course of Revival's business, or should have reasonably foreseen that the mailing and faxing of such false medical documentation by Revival would occur, in furtherance of the Count III defendants' scheme to defraud.

434.    The Count III defendants knew that two (2) or more faxes and mailings would be sent to demand and receive payment from Allstate on certain dates, including those mailings and faxes identified in the chart annexed hereto at Exhibit 7.

435.    As documented above, the Count III defendants repeatedly and intentionally submitted, caused to be submitted, or knew that documentation would be submitted to Allstate for medical services that were purportedly performed by Revival, which they knew would be billed by Revival, in order to collect payment from Allstate under applicable provisions of the Michigan No-Fault Act.

436.    Merhi owned, managed, and controlled Revival and was responsible for all actions taken by Revival and its staff.

437.    Relief and Merhi arranged for the transfer of patients from Relief to Revival in order to disguise and continue the fraudulent conduct and billing described herein.

438.    United Transportation and City 2 City transported patients to Revival for unnecessary physical therapy.

439.   Ortho Med billed for unnecessary DME issued to patients as part of the defendants' predetermined treatment protocol, which gave the appearance that patients were injured when they were not, which allowed Revival to continue billing Allstate for unnecessary and excessive treatment.

440.   Five Star billed Allstate for unnecessary attendant care for patients of Revival, which was used to create the appearance of injury and support for bills submitted by Revival.

441.   The Count III defendants submitted, and caused to be submitted, false and fraudulent medical records, bills, and invoices that created the appearance of injury and permitted Revival to continue billing for unlawful and medically unnecessary alleged treatment.

442.   As a result of, and in reasonable reliance on, these misleading documents and representations, Allstate, by its agents and employees, issued payment drafts to Revival for the benefit of the Count III defendants that would not otherwise have been paid.

443.   The Count III defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

444.   By virtue of the Count III defendants' violation of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted, caused to be submitted, or known to be submitted by them,

and others acting in concert with them, together with the costs of suit, including

reasonable attorney's fees.

## COUNT IV
### VIOLATION OF 18 U.S.C. § 1962(d)
### (Revival Enterprise)
### Against Relief Physical Therapy & Rehab Inc., Five Star Comfort Care LLC, City 2 City Transportation, LLC, United Transportation 1 Inc., Orthopedic Medical Supplies 1 Ltd., and Fayhimie Merhi

445.   Allstate re-alleges, re-pleads, and incorporates by reference paragraphs

1 through 409 set forth above as if fully set forth herein.

446.   Defendants Relief, Five Star, City 2 City, United Transportation, Ortho

Med, and Merhi ("Count IV defendants") conspired with each other to violate 18

U.S.C. § 1962(c) through the facilitation of the operation of Revival.

447.   The Count IV defendants each agreed to further, facilitate, support, and

operate the Revival enterprise.

448.   As such, the Count IV defendants conspired to violate 18 U.S.C. §

1962(c).

449.   The purpose of the conspiracy was to obtain insurance payments from

Allstate on behalf of Revival even though Revival was not eligible to collect such

payments by virtue of its unlawful conduct.

450.   The Count IV defendants were aware of this purpose and agreed to take

steps to meet the conspiracy's objectives, including inter-referrals between

themselves and the creation and submission to Allstate of insurance claim and medical record documents containing material misrepresentations.

451.   Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make insurance payments as a result of the Count IV defendants' unlawful conduct described herein.

452.   By virtue of this violation of 18 U.S.C. § 1962(d), the Count IV defendants are jointly and severally liable to Allstate and Allstate is entitled to recover from each three times the damages sustained by reason of the claims submitted by or on behalf of the Count IV defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

<u>**COUNT V**</u>
**VIOLATION OF 18 U.S.C. § 1962(c)**
**(Five Star Enterprise)**
**Against Relief Physical Therapy & Rehab Inc., Revival Physical Therapy LLC, and Fayhimie Merhi**

453.   Allstate re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 409 set forth above as if fully set forth herein.

454.   Five Star constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, and the activities of which affect, interstate commerce.

455.   In connection with each of the claims identified in the within Complaint, defendants Relief, Revival, and Merhi ("Count V defendants") intentionally caused to be prepared and mailed false medical documentation by Five

84

Star, or knew that such false medical documentation would be mailed in the ordinary course of Five Star's business, or should have reasonably foreseen that the mailing of such false medical documentation by Five Star would occur, in furtherance of the Count V defendants' scheme to defraud.

456.   The Count V defendants knew that two (2) or more mailings would be sent to demand and receive payment from Allstate on certain dates, including those mailings identified in the chart annexed hereto at Exhibit 7.

457.   As documented above, the Count V defendants repeatedly and intentionally submitted, caused to be submitted, or knew that documentation would be submitted to Allstate for attendant care services that were purportedly performed by Five Star, which they knew would be billed by Five Star, in order to collect payment from Allstate under applicable provisions of the Michigan No-Fault Act.

458.   Relief billed Allstate for medically unnecessary physical therapy services, which was used to create the appearance of injury and support for bills submitted by Five Star.

459.   Revival and Merhi billed Allstate for medically unnecessary physical therapy services, which was used to create the appearance of injury and support for bills submitted by Five Star.

460.   The Count V defendants submitted, and caused to be submitted, false and fraudulent medical records, bills, and invoices that created the appearance of

85

injury and permitted Five Star to continue billing for unlawful and medically unnecessary alleged attendant care services.

461.   As a result of, and in reasonable reliance on, these misleading documents and representations, Allstate, by its agents and employees, issued payment drafts to Five Star for the benefit of the Count V defendants that would not otherwise have been paid.

462.   The Count V defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

463.   By virtue of the Count V defendants' violation of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted, caused to be submitted, or known to be submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT VI**
**VIOLATION OF 18 U.S.C. § 1962(d)**
**(Five Star Enterprise)**
**Against Relief Physical Therapy & Rehab Inc., Revival Physical Therapy LLC, and Fayhimie Merhi**

464.   Allstate re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 409 set forth above as if fully set forth herein.

465. Defendants Relief, Revival, and Merhi ("Count VI defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the facilitation of the operation of Five Star.

466. The Count VI defendants each agreed to further, facilitate, support, and operate the Five Star enterprise.

467. As such, the Count VI defendants conspired to violate 18 U.S.C. § 1962(c).

468. The purpose of the conspiracy was to obtain insurance payments from Allstate on behalf of Five Star even though Five Star was not eligible to collect such payments by virtue of its unlawful conduct.

469. The Count VI defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including inter-referrals between themselves and the creation and submission to Allstate of insurance claim and medical record documents containing material misrepresentations.

470. Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make insurance payments as a result of the Count VI defendants' unlawful conduct described herein.

471. By virtue of this violation of 18 U.S.C. § 1962(d), the Count VI defendants are jointly and severally liable to Allstate and Allstate is entitled to recover from each three times the damages sustained by reason of the claims

submitted by or on behalf of the Count VI defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT VII
## VIOLATION OF 18 U.S.C. § 1962(c)
### (City 2 City Enterprise)
### Against Relief Physical Therapy & Rehab Inc., Revival Physical Therapy LLC, and Fayhimie Merhi

472.   Allstate re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 409 set forth above as if fully set forth herein.

473.   City 2 City constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, and the activities of which affect, interstate commerce.

474.   In connection with each of the claims identified in the within Complaint, defendants Relief, Revival, and Merhi ("Count VII defendants") intentionally caused to be prepared, faxed, and mailed false medical documentation by City 2 City, or knew that such false medical documentation would be faxed and mailed in the ordinary course of City 2 City's business, or should have reasonably foreseen that the mailing and faxing of such false medical documentation by City 2 City would occur, in furtherance of the Count VII defendants' scheme to defraud.

475.   The Count VII defendants knew that two (2) or more faxes and mailings would be sent to demand and receive payment from Allstate on certain dates, including those mailings and faxes identified in the chart annexed hereto at Exhibit 7.

476.  As documented above, the Count VII defendants repeatedly and intentionally submitted, caused to be submitted, or knew that documentation would be submitted to Allstate for alleged transportation services that were purportedly performed by City 2 City, which they knew would be billed by City 2 City, in order to collect payment from Allstate under applicable provisions of the Michigan No-Fault Act.

477.  Relief billed Allstate for medically unnecessary physical therapy services to which City 2 City transported patients.

478.  Revival and Merhi billed Allstate for medically unnecessary physical therapy services to which City 2 City transported patients.

479.  The Count VII defendants submitted, and caused to be submitted, false and fraudulent medical records, bills, and invoices that created the appearance of injury and permitted City 2 City to continue billing for unlawful and medically unnecessary alleged transportation services.

480.  As a result of, and in reasonable reliance on, these misleading documents and representations, Allstate, by its agents and employees, issued payment drafts to City 2 City for the benefit of the Count VII defendants that would not otherwise have been paid.

481.  The Count VII defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

482.   By virtue of the Count VII defendants' violation of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted, caused to be submitted, or known to be submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT VIII**
**VIOLATION OF 18 U.S.C. § 1962(d)**
**(City 2 City Enterprise)**
**Against Relief Physical Therapy & Rehab Inc., Revival Physical Therapy**
**LLC, and Fayhimie Merhi**

483.   Allstate re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 409 set forth above as if fully set forth herein.

484.   Defendants Relief, Revival, and Merhi ("Count VIII defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the facilitation of the operation of City 2 City.

485.   The Count VIII defendants each agreed to further, facilitate, support, and operate the City 2 City enterprise.

486.   As such, the Count VIII defendants conspired to violate 18 U.S.C. § 1962(c).

487.   The purpose of the conspiracy was to obtain insurance payments from Allstate on behalf of City 2 City even though City 2 City was not eligible to collect such payments by virtue of its unlawful conduct.

488.   The Count VIII defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including inter-referrals between themselves and the creation and submission to Allstate of insurance claim and medical record documents containing material misrepresentations.

489.   Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make insurance payments as a result of the Count VIII defendants' unlawful conduct described herein.

490.   By virtue of this violation of 18 U.S.C. § 1962(d), the Count VIII defendants are jointly and severally liable to Allstate and Allstate is entitled to recover from each three times the damages sustained by reason of the claims submitted by or on behalf of the Count VIII defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT IX
## VIOLATION OF 18 U.S.C. § 1962(c)
### (Ortho Med Enterprise)
### Against Relief Physical Therapy & Rehab Inc., Revival Physical Therapy LLC, and Fayhimie Merhi

491.   Allstate re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 409 set forth above as if fully set forth herein.

492.   Ortho Med constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, and the activities of which affect, interstate commerce.

493.   In connection with each of the claims identified in the within Complaint, defendants Relief, Revival, and   Merhi ("Count IX defendants") intentionally caused to be prepared, faxed, and mailed false medical documentation by Ortho Med, or knew that such false medical documentation would be faxed and mailed in the ordinary course of Ortho Med's business, or should have reasonably foreseen that the mailing and faxing of such false medical documentation by Ortho Med would occur, in furtherance of the Count IX defendants' scheme to defraud.

494.   The Count IX defendants knew that two (2) or more faxes and mailings would be sent to demand and receive payment from Allstate on certain dates, including those mailings and faxes identified in the chart annexed hereto at Exhibit 7.

495.   As documented above, the Count IX defendants repeatedly and intentionally submitted, caused to be submitted, or knew that documentation would be submitted to Allstate for DME that was purportedly issued by Ortho Med, which they knew would be billed by Ortho Med, in order to collect payment from Allstate under applicable provisions of the Michigan No-Fault Act.

496.   Relief issued medically unnecessary DME billed by Ortho Med.

497.   Revival and Merhi issued medically unnecessary DME billed by Ortho Med.

498.    The Count IX defendants submitted, and caused to be submitted, false and fraudulent medical records, bills, and invoices that created the appearance of injury and permitted Ortho Med to continue billing for unlawful and medically unnecessary alleged DME.

499.    As a result of, and in reasonable reliance on, these misleading documents and representations, Allstate, by its agents and employees, issued payment drafts to Ortho Med for the benefit of the Count IX defendants that would not otherwise have been paid.

500.    The Count IX defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

501.    By virtue of the Count IX defendants' violation of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted, caused to be submitted, or known to be submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## <u>COUNT X</u>
### VIOLATION OF 18 U.S.C. § 1962(d)
### (Ortho Med Enterprise)
### Against Relief Physical Therapy & Rehab Inc., Revival Physical Therapy LLC, and Fayhimie Merhi

502.    Allstate re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 409 set forth above as if fully set forth herein.

503.   Defendants Relief, Revival, and Merhi ("Count X defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the facilitation of the operation of Ortho Med.

504.   The Count X defendants each agreed to further, facilitate, support, and operate the Ortho Med enterprise.

505.   As such, the Count X defendants conspired to violate 18 U.S.C. § 1962(c).

506.   The purpose of the conspiracy was to obtain insurance payments from Allstate on behalf of Ortho Med even though Ortho Med was not eligible to collect such payments by virtue of its unlawful conduct.

507.   The Count X defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including inter-referrals between themselves and the creation and submission to Allstate of insurance claim and medical record documents containing material misrepresentations.

508.   Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make insurance payments as a result of the Count X defendants' unlawful conduct described herein.

509.   By virtue of this violation of 18 U.S.C. § 1962(d), the Count X defendants are jointly and severally liable to Allstate and Allstate is entitled to recover from each three times the damages sustained by reason of the claims

submitted by or on behalf of the Count X defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XI
## VIOLATION OF 18 U.S.C. § 1962(c)
### (United Transportation Enterprise)
### Against Relief Physical Therapy & Rehab Inc., Revival Physical Therapy LLC, and Fayhimie Merhi

510.   Allstate re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 409 set forth above as if fully set forth herein.

511.   United Transportation constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, and the activities of which affect, interstate commerce.

512.   In connection with each of the claims identified in the within Complaint, defendants Relief, Revival, and Merhi ("Count XI defendants") intentionally caused to be prepared, faxed, and mailed false medical documentation by United Transportation, or knew that such false medical documentation would be faxed and mailed in the ordinary course of United Transportation's business, or should have reasonably foreseen that the mailing and faxing of such false medical documentation by United Transportation would occur, in furtherance of the Count XI defendants' scheme to defraud.

513.   The Count XI defendants knew that two (2) or more faxes and mailings would be sent to demand and receive payment from Allstate on certain dates,

including those mailings and faxes identified in the chart annexed hereto at Exhibit 7.

514. As documented above, the Count XI defendants repeatedly and intentionally submitted, caused to be submitted, or knew that documentation would be submitted to Allstate for transportation services that were purportedly performed by United Transportation, which they knew would be billed by United Transportation, in order to collect payment from Allstate under applicable provisions of the Michigan No-Fault Act.

515. Relief billed Allstate for medically unnecessary physical therapy services to which United Transportation transported patients.

516. Revival and Merhi billed Allstate for medically unnecessary physical therapy services to which United Transportation transported patients.

517. The Count XI defendants submitted, and caused to be submitted, false and fraudulent medical records, bills, and invoices that created the appearance of injury and permitted United Transportation to continue billing for unlawful and medically unnecessary alleged transportation.

518. As a result of, and in reasonable reliance on, these misleading documents and representations, Allstate, by its agents and employees, issued payment drafts to United Transportation for the benefit of the Count XI defendants that would not otherwise have been paid.

519.   The Count XI defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

520.   By virtue of the Count XI defendants' violation of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted, caused to be submitted, or known to be submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT XII**
**VIOLATION OF 18 U.S.C. § 1962(d)**
**(United Transportation Enterprise)**
**Against Relief Physical Therapy & Rehab Inc., Revival Physical Therapy LLC, and Fayhimie Merhi**

521.   Allstate re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 409 set forth above as if fully set forth herein.

522.   Defendants Relief, Revival, and Merhi ("Count XII defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the facilitation of the operation of United Transportation.

523.   The Count XII defendants each agreed to further, facilitate, support, and operate the United Transportation enterprise.

524.   As such, the Count XII defendants conspired to violate 18 U.S.C. § 1962(c).

525.   The purpose of the conspiracy was to obtain insurance payments from Allstate on behalf of United Transportation even though United Transportation was not eligible to collect such payments by virtue of its unlawful conduct.

526.   The Count XII defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including inter-referrals between themselves and the creation and submission to Allstate of insurance claim and medical record documents containing material misrepresentations.

527.   Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make insurance payments as a result of the Count XII defendants' unlawful conduct described herein.

528.   By virtue of this violation of 18 U.S.C. § 1962(d), the Count XII defendants are jointly and severally liable to Allstate and Allstate is entitled to recover from each three times the damages sustained by reason of the claims submitted by or on behalf of the Count XII defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XIII
## COMMON LAW FRAUD
### Against All Defendants

529.   Allstate re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 409 set forth above as if fully set forth herein.

530.   The scheme to defraud perpetrated by Relief, Revival, Five Star, City 2 City, Ortho Med, United Transportation, and Merhi ("Count XIII defendants") was dependent upon a succession of material misrepresentations of fact that the defendants were entitled to collect benefits pursuant to applicable provisions of the Michigan No-Fault Act.

531.   The misrepresentations of fact made by the Count XIII defendants include those material misrepresentations discussed in section XI.A, *supra*.

532.   The Count XIII defendants' representations were false or required disclosure of additional facts to render the information furnished not misleading.

533.   The misrepresentations were intentionally made by the Count XIII defendants in furtherance of their scheme to defraud Allstate by submitting, causing to be submitted, or knowing that non-compensable claims for payment pursuant to applicable provisions of the Michigan No-Fault Act would be submitted to Allstate.

534.   The Count XIII defendants' misrepresentations were known to be false and were made for the purpose of inducing Allstate to make payments for claims that are not compensable under Michigan law.

535.   Allstate reasonably relied upon such material misrepresentations to its detriment in paying numerous non-meritorious bills for alleged medical expenses pursuant to insurance claims and in incurring expenses related to the adjustment and processing of claims submitted by the defendants.

536.   As a direct and proximate result of the defendants' fraudulent representations and acts, Allstate has been damaged in its business and property as previously described herein.

## COUNT XIV
## CIVIL CONSPIRACY
## Against All Defendants

537.   Allstate re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 409 set forth above as if fully set forth herein.

538.   Defendants Relief, Revival, Five Star, City 2 City, Ortho Med, United Transportation, and Merhi ("Count XIV defendants") combined and acted in concert to accomplish the unlawful purpose of defrauding Allstate by submitting claims for payment pursuant to applicable provisions of the Michigan No-Fault Act to which they were not entitled because (1) the defendants did not actually render the treatment/services/DME for which claims were submitted, (2) the defendants did not provide reasonably necessary treatment/services/DME, (3) the defendants did not lawfully render treatment/services/DME, and (4) the defendants engaged in fraudulent billing practices.

539.   The Count XIV defendants worked together to achieve an unlawful purpose (namely, defrauding Allstate for personal gain).

540.   This purpose was known to all of the Count XIV defendants and intentionally pursued.

541. Indeed, as detailed above, the Count XIV defendants engaged in inter-referrals to each other of patients for unnecessary treatment, attendant care, DME, and transportation so that each could submit improper bills to Allstate.

542. Despite knowing that the defendants were not entitled to payment pursuant to applicable provisions of the Michigan No-Fault Act because they billed for services that were not actually provided, because they billed for services that were not reasonably necessary, because treatment was not lawfully rendered, and because they engaged in fraudulent billing practices, the Count XIV defendants nonetheless submitted, caused to be submitted, or knew that claims would be submitted (with accompanying false medical documentation) to Allstate seeking payment.

543. In reasonable reliance on the false medical documentation submitted by the defendants, Allstate paid certain of the claims submitted.

544. All of the Count XIV defendants directly benefited from the payments made to Relief, Revival, Five Star, City 2 City, Ortho Med, and United Transportation.

545. All of the Count XIV defendants actively and intentionally partook in a scheme to defraud Allstate and also encouraged and aided other Count XIV defendants in the commission of acts done for the benefit of all Count XIV defendants and to the unjustified detriment of Allstate.

546.   Accordingly, all of the Count XIV defendants are equally liable for the fraud perpetrated on Allstate pursuant to their conspiracy.

## COUNT XV
## PAYMENT UNDER MISTAKE OF FACT
**Against Relief Physical Therapy & Rehab Inc., Revival Physical Therapy LLC, Five Star Comfort Care LLC, City 2 City Transportation, LLC, Orthopedic Medical Supplies 1 Ltd., and United Transportation 1 Inc.**

547.   Allstate re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 409 set forth above as if fully set forth herein.

548.   Allstate paid the entity defendants under a misunderstanding, misapprehension, error, fault, or ignorance of material facts, namely, the scheme to defraud Allstate by misrepresenting the fact, lawfulness, and necessity of services purportedly provided and billed by Relief, Revival, Five Star, City 2 City, Ortho Med, and United Transportation ("Count XV defendants").

549.   Allstate sustained damages by paying under a mistake of fact the claims submitted by the Count XV defendants, which misrepresented the fact, reasonableness, necessity, and lawfulness of the medical services/DME allegedly rendered and whether the patient's injury arose out of a motor vehicle accident.

550.   The Count XV defendants, individually and jointly, would be unjustly enriched if permitted to retain the payments made to them by Allstate under a mistake of fact.

551.   Allstate is entitled to restitution from each of the Count XV defendants, individually and jointly, for all monies paid to and/or received by them from Allstate.

552.   The Count XV defendants' retention of these payments would violate fundamental principles of justice, equity, and good conscience.

**COUNT XVI**
**UNJUST ENRICHMENT**
**Against All Defendants**

553.   Allstate re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 409 set forth above as if fully set forth herein.

554.   Defendants Relief, Revival, Five Star, City 2 City, Ortho Med, United Transportation, and Merhi ("Count XVI defendants") submitted, caused to be submitted, or benefited from claims submitted to Allstate that caused Allstate to pay money, in reasonable belief that it was legally obligated to make such payments based upon the defendants' fraudulent misrepresentations.

555.   Allstate's payments constitute a benefit which the Count XVI defendants aggressively sought and voluntarily accepted.

556.   The Count XVI defendants wrongfully obtained or benefited from payments from Allstate through the fraudulent scheme detailed herein.

557.   The Count XVI defendants' retention of these payments would violate fundamental principles of justice, equity, and good conscience.

## COUNT XVII
### DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201
### Against All Defendants

558.   Allstate re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 409 set forth above as if fully set forth herein.

559.   Defendants Relief, Revival, Five Star, City 2 City, Ortho Med, United Transportation, and Merhi ("Count XVII defendants") routinely billed for unnecessary and unlawful services/DME with respect to the patients at issue in this Complaint.

560.   The Count XVII defendants also billed for services not rendered.

561.   The Count XVII defendants also billed for services/DME pursuant to a fraudulent scheme whereby patients were subjected to a predetermined treatment protocol for the purpose of generating claims to Allstate, and not for the purpose of providing reasonably necessary medical treatment, DME, or services.

562.   Pursuant to the Michigan No-Fault Act, an insurer is liable to pay benefits only for reasonable and necessary expenses for lawfully rendered treatment arising out of a motor vehicle accident.  Mich. Comp. Laws §§ 500.3105, 500.3107, and 500.3157(1).

563.   The lack of reasonableness and necessity are defenses to an insurer's obligation to pay No-Fault benefits arising out of a motor vehicle accident.  Mich. Comp. Laws § 500.3107.

564.   The lack of lawfully-rendered treatment and services (such as treatment arising from illegal solicitation and unlicensed treatment) is also a defense to an insurer's obligation to pay No-Fault benefits.  Mich. Comp. Laws §§ 500.3157(1).

565.   Where a provider is unable to show that an expense has been incurred for a reasonably necessary product or service arising out of a motor vehicle accident, there can be no finding of a breach of the insurer's duty to pay, and thus no finding of liability with regard to that expense.

566.   The Count XVII defendants continue to submit claims under applicable provisions of the Michigan No-Fault Act for unnecessary and unlawfully rendered medical services/DME to Allstate, and other claims remain pending with Allstate.

567.   The Count XVII defendants will continue to submit claims under applicable provisions of the Michigan No-Fault Act absent a declaration by this Court that Allstate has no obligation to pay fraudulent pending and previously-denied insurance claims submitted by any of the Count XVII defendants for any or all of the reasons set out in the within Complaint.

568.   Accordingly, Allstate requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, declaring that the Count XVII defendants billed for unnecessary and unlawful treatment that is not compensable under applicable provisions of the Michigan No-Fault Act.

569.   Allstate also requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, declaring that the Count XVII defendants were engaged in a fraudulent scheme whereby they billed for unnecessary and unlawful treatment and submitted unreasonable charges for the same to Allstate at all relevant times.

570.   As such, the Count XVII defendants have no standing to submit, pursue, or receive benefits or any other payment from Allstate, and Allstate requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, declaring that the Count XVII defendants cannot seek payment from Allstate for benefits under Michigan's No-Fault Act, Mich. Comp. Laws § 500.3101, *et seq.*, any policy of insurance, any assignment of benefits, any lien of any nature, or any other claim for payment related to the fraudulent conduct detailed in the within Complaint.

571.   Allstate further requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, declaring that the Count XVII defendants cannot balance bill or otherwise seek payment from any person insured under an Allstate policy or for whom Allstate is the responsible payor related to the fraudulent conduct detailed in the within Complaint.

## XV.   DEMAND FOR RELIEF

WHEREFORE, plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, and Allstate Property and Casualty Insurance Company respectfully pray that judgment enter in their favor as follows:

## COUNT I
### VIOLATION OF 18 U.S.C. § 1962(c)
### (Relief Enterprise)
### Against Five Star Comfort Care LLC, City 2 City Transportation, LLC, United Transportation 1 Inc., Orthopedic Medical Supplies 1 Ltd., and Fayhimie Merhi

(a)     AWARD Allstate its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT II
### VIOLATION OF 18 U.S.C. § 1962(d)
### (Relief Enterprise)
### Against Five Star Comfort Care LLC, City 2 City Transportation, LLC, United Transportation 1 Inc., Orthopedic Medical Supplies 1 Ltd., and Fayhimie Merhi

(a)     AWARD Allstate its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT III
### VIOLATION OF 18 U.S.C. § 1962(c)
### (Revival Enterprise)
### Against Relief Physical Therapy & Rehab Inc., Five Star Comfort Care LLC, City 2 City Transportation, LLC, United Transportation 1 Inc., Orthopedic Medical Supplies 1 Ltd., and Fayhimie Merhi

(a)     AWARD Allstate its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT IV
### VIOLATION OF 18 U.S.C. § 1962(d)
### (Revival Enterprise)
### Against Relief Physical Therapy & Rehab Inc., Five Star Comfort Care LLC, City 2 City Transportation, LLC, United Transportation 1 Inc., Orthopedic Medical Supplies 1 Ltd., and Fayhimie Merhi

(a)     AWARD Allstate its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT V
## VIOLATION OF 18 U.S.C. § 1962(c)
### (Five Star Enterprise)
### Against Relief Physical Therapy & Rehab Inc, Revival Physical Therapy LLC, and Fayhimie Merhi

(a)     AWARD Allstate its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT VI
## VIOLATION OF 18 U.S.C. § 1962(d)
### (Five Star Enterprise)
### Against Relief Physical Therapy & Rehab Inc., Revival Physical Therapy LLC, and Fayhimie Merhi

(a)     AWARD Allstate its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)　　GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)　　GRANT all other relief this Court deems just.

## COUNT VII
### VIOLATION OF 18 U.S.C. § 1962(c)
### (City 2 City Enterprise)
### Against Relief Physical Therapy & Rehab Inc., Revival Physical Therapy LLC, and Fayhimie Merhi

(a)　　AWARD Allstate its actual and consequential damages in an amount to be determined at trial;

(b)　　AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)　　GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)　　GRANT all other relief this Court deems just.

## COUNT VIII
### VIOLATION OF 18 U.S.C. § 1962(d)
### (City 2 City Enterprise)
### Against Relief Physical Therapy & Rehab Inc., Revival Physical Therapy LLC, and Fayhimie Merhi

(a)　　AWARD Allstate its actual and consequential damages in an amount to be determined at trial;

(b)　　AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

110

(c)   GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)   GRANT all other relief this Court deems just.

## COUNT IX
### VIOLATION OF 18 U.S.C. § 1962(c)
### (Ortho Med Enterprise)
### Against Relief Physical Therapy & Rehab Inc., Revival Physical Therapy LLC, and Fayhimie Merhi

(a)   AWARD Allstate its actual and consequential damages in an amount to be determined at trial;

(b)   AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)   GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)   GRANT all other relief this Court deems just.

## COUNT X
### VIOLATION OF 18 U.S.C. § 1962(d)
### (Ortho Med Enterprise)
### Against Relief Physical Therapy & Rehab Inc., Revival Physical Therapy LLC, and Fayhimie Merhi

(a)   AWARD Allstate its actual and consequential damages in an amount to be determined at trial;

(b)   AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

111

(c)     GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XI
## VIOLATION OF 18 U.S.C. § 1962(c)
### (United Transportation Enterprise)
### Against Relief Physical Therapy & Rehab Inc., Revival Physical Therapy LLC, and Fayhimie Merhi

(a)     AWARD Allstate its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XII
## VIOLATION OF 18 U.S.C. § 1962(d)
### (United Transportation City Enterprise)
### Against Relief Physical Therapy & Rehab Inc., Revival Physical Therapy LLC, and Fayhimie Merhi

(a)     AWARD Allstate its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XIII
## COMMON LAW FRAUD
### Against All Defendants

(a)     AWARD Allstate its actual and consequential damages against the defendants jointly and severally in an amount to be determined at trial;

(b)     AWARD Allstate its costs, including, but not limited to, investigative costs incurred in the detection of the defendants' illegal conduct; and

(c)     GRANT all other relief this Court deems just.

## COUNT XIV
## CIVIL CONSPIRACY
### Against All Defendants

(a)     AWARD Allstate its actual and consequential damages against the defendants jointly and severally in an amount to be determined at trial;

(b)     AWARD Allstate its costs, including, but not limited to, investigative costs incurred in the detection of the defendants' illegal conduct; and

(c)     GRANT all other relief this Court deems just.

**COUNT XV**
**PAYMENT UNDER MISTAKE OF FACT**
**Against Relief Physical Therapy & Rehab Inc., Revival Physical Therapy**
**LLC, Five Star Comfort Care LLC, City 2 City Transportation, LLC,**
**Orthopedic Medical Supplies 1 Ltd., and United Transportation 1 Inc.**

(a)     AWARD Allstate its actual and consequential damages in an amount

to be determined at trial; and

(b)     GRANT all other relief this Court deems just.

**COUNT XVI**
**UNJUST ENRICHMENT**
**Against All Defendants**

(a)     AWARD Allstate its actual and consequential damages in an amount

to be determined at trial; and

(b)     GRANT all other relief this Court deems just.

**COUNT XVII**
**DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201**
**Against All Defendants**

(a)     DECLARE that Allstate has no obligation to pay pending and

previously-denied insurance claims submitted by Relief Physical Therapy & Rehab

Inc., Revival Physical Therapy LLC, Five Star Comfort Care LLC, City 2 City

Transportation, LLC, Orthopedic Medical Supplies 1 Ltd., United Transportation 1

Inc., and Fayhimie Merhi, jointly and severally, for any or all of the reasons set out

in the within Complaint;

114

(b)      DECLARE that Relief Physical Therapy & Rehab Inc., Revival Physical Therapy LLC, Five Star Comfort Care LLC, City 2 City Transportation, LLC, Orthopedic Medical Supplies 1 Ltd., United Transportation 1 Inc., and Fayhimie Merhi, jointly and severally, cannot seek payment from Allstate pursuant to the Michigan No-Fault Act, Mich. Comp. Laws § 500.3101, *et seq*., any policy of insurance, any assignment of benefits, any lien of any nature, or any other claim for payment related to the fraudulent conduct detailed in the within Complaint;

(c)      DECLARE that Relief Physical Therapy & Rehab Inc., Revival Physical Therapy LLC, Five Star Comfort Care LLC, City 2 City Transportation, LLC, Orthopedic Medical Supplies 1 Ltd., United Transportation 1 Inc., and Fayhimie Merhi, jointly and severally, cannot balance bill or otherwise seek payment from any person insured under an Allstate policy or for whom Allstate is the responsible payor related to the fraudulent conduct detailed in the within Complaint; and

(d)      GRANT such other relief as this Court deems just and appropriate under Michigan law and the principles of equity.

## XVI.  JURY DEMAND

The plaintiffs hereby demand a trial by jury on all claims.

[SIGNATURE PAGE FOLLOWS]

115

KTM,

*/s/ Andrew H. DeNinno*

_____
Nathan A. Tilden (P76969)
ntilden@ktmpc.com
Andrew H. DeNinno
adeninno@ktmpc.com
William G. Potter
wpotter@ktmpc.com
38777 Six Mile Road, Suite 314
Livonia, MI 48152
(734) 521-9000

350 Granite Street, Suite 2204
Braintree, MA 02184
(617) 770-2214

Dated:  September 8, 2023                          *Attorneys for Plaintiffs*